A09A1743. LURRY v. McCANTS.
(690 SE2d 496)

PHIPPS, Judge.

Reginald Lurry petitioned for modifications to the child custody and support terms that had been established by a consent order with his daughter's mother, Austra McCants. The trial court denied Lurry's petition and awarded McCants attorney fees and expenses. Lurry challenges those rulings in this appeal.[1] For reasons that follow, we affirm the denial of Lurry's modification petition, vacate the award for attorney fees and expenses, and remand this case for proceedings not inconsistent with this opinion.

In August 2006, Lurry and McCants entered into a consent order, which awarded them joint legal custody of their daughter. Regarding physical custody, the consent order provided for alternat-

---

[15] *Rish*, supra at 815.

[1] Lurry's direct appeal is authorized because it stems from a petition filed after January 1, 2008. The General Assembly amended OCGA § 5-6-34 in 2007 to provide that all modifications of child custody orders filed on or after January 1, 2008 are directly appealable. See *Taylor v. Curl*, 298 Ga. App. 45 (679 SE2d 80) (2009).

ing periods with the child: McCants would have her for a two-week period, then Lurry for a one-week period. In addition, the consent order established what the parties referred to as a "first right of refusal" in connection with time with their child.[2] The consent order further obligated Lurry to pay a set amount of child support each month.

In June 2008, Lurry petitioned under OCGA § 19-9-3 for modification of child custody and support, alleging that changes in material conditions and circumstances warranted the modification.[3] At a hearing in January 2009, both parents presented evidence. Thereafter, the court determined that there was no showing of any change warranting modification in custody or support, then issued the rulings contested herein.

1. Lurry contends that the trial court erred by refusing to modify child custody, given evidence that McCants had violated the custody terms of the 2006 consent order, together with other evidence that he claims showed that material conditions or circumstances had changed since that consent order. According to Lurry, the court's ruling was not based solely upon what was in the child's best interest and what would promote the child's welfare, but upon evidence that he had not remained current on his child support obligations.

Pursuant to OCGA § 19-9-3 (a) (2), "[t]he duty of the judge in all [child custody] cases shall be to exercise discretion to look to and determine solely what is for the best interest of the child and what will best promote the child's welfare and happiness and to make his or her award accordingly."[4]

> Whether particular circumstances warrant a change in custody is a fact question determined under the unique situation in each individual case. In contemplating a custodial change, the trial court must exercise its discretion to determine whether a change is in the best interests of the child. The circumstances warranting a change in custody are not confined to those of the custodial parent: any new

---

[2] More specifically, the consent order provided: "If the party having the child must be away from the child for a period of more than four (4) hours after 6:00 p.m. on any day that the child is in the respective custody of a party, then the parent not exercising custody/visitation with the child has the first right of refusal to have child while the custodial/visiting parent is unavailable."

[3] See OCGA § 19-9-3 (b) (concerning changing visitation and parenting time).

[4] See *Bodne v. Bodne*, 277 Ga. 445, 446 (588 SE2d 728) (2003) (when exercising discretion in all child custody cases, trial court must consider best interest of child and cannot apply a bright-line test); *Scott v. Scott*, 276 Ga. 372, 377 (578 SE2d 876) (2003) (the paramount concern in any change of custody is the best interest and welfare of the minor child).

and material change in circumstances that affects the child must also be considered.[5]

"When the trial court has exercised that discretion, this court will not interfere unless the evidence shows a clear abuse of discretion, and where there is any evidence to support the trial court's finding, this court will not find there was an abuse of discretion."[6]

Maintaining that he was entitled to a change in the child custody arrangement, Lurry cites evidence that he presented at the hearing, including evidence that the child's mother had interfered with his "first right of refusal." Lurry adduced evidence at the hearing that McCants had worked late hours and had picked up their daughter from babysitters' homes after her work shift ended at some time after 10:00 p.m. Lurry showed that this pattern had disturbed the child's rest, yet McCants had instructed the babysitters not to allow him to get their child. Lurry cites evidence that during the child's most recent school year, as a third-grader, she had been tardy thirty-eight times, had incurred three unexcused absences, had sometimes arrived at school hungry, and had often slept during class. Lurry also cites evidence that the child appeared at school one day in May 2007 with a "mark" on her back, attracting the attention of one of her teachers, which led to the involvement of the Department of Family and Children Services (DFCS) with his child and McCants. Lurry testified that these matters all had occurred when the child was under the physical care of McCants.

Lurry further cites evidence that, without his prior notice or consent, McCants took their daughter to Nebraska during the Christmas holidays in 2008, even though the consent order provided for him to have her at that time.

Lurry claimed at the hearing that he would be able to care for his daughter if awarded primary custody of her. He testified that he was gainfully employed in the construction industry, in which he had worked for the last 20 years. He also testified about his monthly income and showed that he lived with his adult sister, who had and would continue to assist him in caring for his child. Lurry had alleged in his petition that he was fit and able to have sole custody of his minor child, that the child's mother should have reasonable visitation, and that once custody was changed, the mother should be required to pay child support.

In ruling upon Lurry's petition, however, the trial judge was not limited to evidence that Lurry believes supported his claims. A judge hearing the issue of child custody "may take into consideration all

[5] *Scott*, supra at 373 (citations omitted).

[6] *Frazier v. Frazier*, 280 Ga. 687, 689 (2) (631 SE2d 666) (2006) (citation omitted).

the circumstances of the case."[7] "In determining the best interests of the child, the judge may consider any relevant factor including, but not limited to [those listed in OCGA § 19-9-3 (a) (3)]."[8] Among the factors listed are: the capacity and disposition of each parent to give the child love, affection, and guidance and to continue the education and rearing of the child; each parent's knowledge and familiarity of the child and the child's needs; the capacity and disposition of each parent to provide the child with day-to-day needs, with consideration made for the potential payment of child support by the other parent; the importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity; the home, school, and community record and history of the child; and each parent's involvement, or lack thereof, in the child's education, social, and extracurricular activities.[9]

In this case, the trial judge was presented additional evidence of relevant factors. One of the women who had provided babysitting for the child testified that she had witnessed very good interactions between Lurry and his daughter; she perceived him as a loving, caring father. Similarly, another woman who had provided babysitting for the child described McCants as a "great mom," a mom she had never seen do anything inappropriate to her child, and a mom who had constantly tried to "make [her child] mind," who had tried to make the child do her homework, and who had tried to keep the child involved in outside activities. This babysitter described the child as good, smart, funny, and happy-go-lucky.

The child's third-grade teacher described the child as smart, astute, brilliant, a straight-A student, whimsical, "extremely gifted," and "just a joy in the classroom." She recalled that McCants and Lurry had each been involved with their daughter's schooling and found them to be good parents.

Evidence was presented that the child also participated in numerous extracurricular activities: chorus, piano lessons, gymnastics, Girl Scouts of America, the Cool Girls mentoring program, and a science program at the Fernbank Museum. The mother testified that, with the exception of gymnastics, which had been sponsored by Lurry's sister, it was she who had enrolled the child in these activities and who had paid for them.

McCants testified that from 2004 until November 2008, she worked as a restaurant waitress, and her work hours did not end

VALDLAW LIBRARY

---

[7] OCGA § 19-9-3 (a) (2).

[8] OCGA § 19-9-3 (a) (3).

[9] See OCGA § 19-9-3 (a) (3).

until after 10:00 p.m. Meanwhile, she had resumed pursuit of a college education. She had been collecting unemployment compensation, was the recipient of several scholarships, as well as other financial aid, and anticipated graduating by the end of 2010. McCants testified that her college courses were scheduled during the child's school hours, after which she would pick up her daughter, then take her to any scheduled extracurricular activity.

McCants also gave testimony about having been contacted by DFCS. Underlying the contact were scratches on the child's back, which had occurred while the child was playing with children of one of her babysitters. The matter was closed by DFCS without any action taken against McCants.

McCants described that Lurry had forfeited opportunities to exercise his "first right of refusal," testifying that during those two-week periods that she had physical custody of their child, Lurry was generally in Orlando, Florida on a work assignment.[10] McCants conceded, however, that she had failed to comply with the 2006 consent order when she took the child to Nebraska. And Lurry points out that appellate courts of this state have recognized instances where repeated denial of the non-custodial parent's visitation authorized custody changes.[11]

The trial court noted that Lurry's petition was somewhat in the nature of a petition for contempt, remarking further that Lurry, too, had failed to comply with the 2006 consent order. Lurry had admitted at the hearing that he had repeatedly failed to make timely child support payments and that he had wholly disregarded the 2006 consent order's requirement upon him to enroll in Alcoholics Anonymous.

In any event, the record reflects that, in making its determination upon Lurry's modification petition, the trial court appropriately considered the numerous relevant factors shown by the evidence. Because there was evidence supporting its decision to reject Lurry's requests for changes, we cannot conclude that the court abused its discretion.[12]

2. Lurry contends that the trial court erred by awarding, under

---

[10] Lurry testified that during a work assignment in Orlando, which lasted from May 2005 through May 2007, he ordinarily spent two-week periods there and returned to his home in Georgia for his one-week period of physical custody of his daughter.

[11] See, e.g., *Bull v. Bull*, 243 Ga. 72 (2) (252 SE2d 494) (1979); *Jones v. Kimes*, 287 Ga. App. 526, 528 (652 SE2d 171) (2007).

[12] See *Frazier*, supra (refusing to disturb custody provisions, where evidence failed to show an abuse of trial court's discretion); *Bodne*, supra at 447 (finding no abuse of discretion by trial court, where record reflected that when making its custodial determination based on the best interest of the child standard, trial court appropriately considered the myriad factors that had an impact on the children as established by the evidence adduced before it).

OCGA § 19-9-3, attorney fees to McCants.

(a) Lurry first asserts that the $5,000 award "could not have been in consideration of his financial circumstances." Lurry points out that recently enacted OCGA § 19-9-3 (g) provides that "*[e]xcept as provided in Code Section 19-6-2 . . .* , the judge may order reasonable attorney's fees and expenses of litigation."[13] And he cites language in OCGA § 19-6-2 that requires the court to "consider the financial circumstances of both parties as a part of its determination of the amount of attorney's fees, if any, to be allowed against either party."[14] Lurry argues that, together, these two provisions mandated the trial court to take into account his financial ability.

Assuming, without deciding, that the two Code provisions are properly construed together so as to lead to the mandate that Lurry urges,[15] Lurry has failed to meet his burden of showing error by the record. Unlike in cases relied upon by Lurry,[16] there was evidence presented during the hearing of his, as well as McCants's, financial circumstances. Thus, Lurry's assertion that the trial court could not have considered his financial circumstances provides no basis for disturbing the award.[17]

(b) Finally, Lurry asserts that there was no evidence presented to the court regarding the reasonableness of the attorney fees. McCants made a generalized proffer of evidence concerning the amount of attorney fees she had incurred prior to the date of the hearing, but the proffer lacked billing records or other evidence showing precisely how her attorney's time had been spent. Without such, the evidence was insufficient to determine whether the attor-

---

[13] (Emphasis supplied.)

[14] OCGA § 19-6-2 (a) (1).

[15] OCGA § 19-6-2 allows, under certain circumstances, the grant of attorney fees "whether the action is for alimony, divorce and alimony, or contempt of court arising out of either an alimony case or a divorce and alimony case." And the Supreme Court of Georgia has held, "The purpose of an award of attorney fees pursuant to § 19-6-2 is to ensure effective representation of both spouses so that all issues can be fully and fairly resolved. . . . Thus, an award under OCGA § 19-6-2 depends on the financial circumstances of the parties, not their wrongdoing." *Williams v. Cooper*, 280 Ga. 145, 146-147 (1) (625 SE2d 754) (2006) (citations and punctuation omitted). Lurry and McCants, however, were never married, and the language of OCGA § 19-6-2 upon which Lurry relies – requiring trial courts to "consider the financial circumstances of both parties as a part of its determination of the amount of attorney's fees, if any, to be allowed against either party" – is not expressly contained in OCGA § 19-9-3 (g).

[16] See, e.g., *Findley v. Findley*, 280 Ga. 454, 463 (2) (629 SE2d 222) (2006) (ruling that, if trial court based its attorney fee award on OCGA § 19-6-2, it was error to do so because there was no evidence of the parties' financial circumstances that authorized such an award).

[17] See generally *McRae v. State*, 289 Ga. App. 418, 420 (1) (657 SE2d 323) (2008) (it is presumed that, during a nonjury trial, the court is able to sift the wheat from the chaff and select only the legal evidence).

ney fees were reasonable.[18]

> When a party seeking attorney fees has failed to present an essential element of proof, but the trial court nevertheless awarded attorney fees, we have consistently reversed or vacated that portion of the judgment awarding the attorney fees and remanded the case to the trial court to hold an evidentiary hearing to allow the party, if possible, to cure the matter.[19]

Accordingly, we vacate that portion of the judgment awarding McCants $5,000 "for attorney fees and expenses pursuant to OCGA § 19-9-3" and providing that "[e]ach party shall bear the remainder of his or her own attorney fees and expenses." We remand the case to the trial court for an evidentiary hearing on the amount of the attorney fees and expenses or for other proceedings not inconsistent with this opinion.

*Judgment affirmed in part and vacated in part, and case remanded with direction. Smith, P. J., and Bernes, J., concur.*

DECIDED FEBRUARY 1, 2010.

*Shana M. Rooks*, for appellant.
*David E. Baum*, for appellee.

---

[18] See *Hardnett v. Ogundele*, 291 Ga. App. 241, 245 (2) (661 SE2d 627) (2008) (given generalized and approximated proffer of time spent, the lack of billing records or other evidence showing precisely how attorney's time was spent, and the absence of any evidence as to the reasonableness of fees, evidence was insufficient to authorize award of attorney fees); *Gray v. King*, 270 Ga. App. 855, 858 (2) (b) (608 SE2d 320) (2004) (vacating award where "there was no testimony by any witness as to the reasonableness of the fees"); *4WD Parts Center v. Mackendrick*, 260 Ga. App. 340, 346 (2) (d) (579 SE2d 772) (2003) (vacating award where trial attorney failed to identify with particularity how his time was spent). Compare *Santora v. American Combustion*, 225 Ga. App. 771, 776 (3) (485 SE2d 34) (1997) (affirming award where detailed billing records were admitted and attorney with personal knowledge testified as to (i) how the time was computed; (ii) how time was spent in the matter at issue; and (iii) the reasonableness of the fees).

[19] *Hardnett*, supra at 245-246 (citation omitted).