**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**January 13, 2014**

# In the Court of Appeals of Georgia

A13A0445. KUEHN v. KEY.

PHIPPS, Chief Judge.

In this appeal, we review a child custody ruling and an award of attorney fees. For reasons explained below, we affirm the judgment as it pertains to the child custody ruling, vacate the award of attorney fees, and remand the case for proceedings not inconsistent with this opinion.

When Carrie (Key) Kuehn (the mother) and Michael Key (the father) divorced in October 2007, the mother was awarded primary physical custody of their two young sons; the father was awarded visitation and ordered to pay child support. In November 2011, the father filed a "Petition for Modification"; the boys were then eight and nine years old. The father alleged in the petition that the mother's new husband (the stepfather) had repeatedly inflicted unnecessary and unreasonable

physical and mental punishment upon the boys and that the mother had refused to intervene or to stop the stepfather's actions, which had seriously injured the children. The father requested that he be awarded primary physical custody, that the mother be granted visitation, and that she pay child support; the father also requested in his petition an award of attorney fees. After a hearing thereon, the trial court granted these requests.

1. The mother contends that the change in custody was not authorized, asserting that there was no evidence of a material change of condition affecting the welfare of the children.

"A petition to change child custody should be granted only if the trial court finds that there has been a material change of condition affecting the welfare of the child since the last custody award."[1] "Whether particular circumstances warrant a change in custody is a fact question determined under the unique situation in each individual case."[2] "In determining whether or not a material change in circumstances substantially affecting the welfare of a child or children has taken place, the trial judge is vested with a discretion which will not be controlled by this court unless it

[1] *Viskup v. Viskup*, 291 Ga. 103, 105 (2) (727 SE2d 97) (2012).

[2] *Scott v. Scott*, 276 Ga. 372, 373 (578 SE2d 876) (2003) (citation omitted).

2

is abused."[3] Accordingly, "[t]his court will not interfere with the trial judge's finding when there is any evidence to support it."[4]

At the hearing, the father adduced evidence that on November 22, 2011, when the boys' paternal grandmother picked them up from school, they immediately told her that the older boy, then nine years old, had received a "terrible" whipping from their stepfather several days earlier. The older boy told his grandmother that the stepfather had hit him "so loud" that "it sounded like it hit a table"; the younger boy added, "yes, a metal table." The grandmother testified that the boys were frightened and complained that their stepfather had been mean to them and that their mother had backed up their stepfather. The grandmother noticed that the older boy appeared to be in pain and was having trouble sitting down. She recounted that she thus checked her grandson's buttocks, discovering a bruise that "was huge. It almost covered his whole hip. Plus, below the hip, it was swollen. His hip was swollen down to part of his leg, and it was blue, purple, red, had streaks in it."

---

[3] *Horn v. Shepherd*, 292 Ga. 14, 18 (5) (732 SE2d 427) (2012) (citation omitted).

[4] Id. (citation omitted).

The grandmother testified that the stepfather had been in the boys' lives for approximately five years and that his harsh treatment of the boys had been ongoing. For example, when the older boy had been in the first grade for about two weeks, he forgot and left his notebook at school. The grandmother testified about what she saw happen next: "[The stepfather] got in his face and started screaming at him, What do you mean, forgetting that. You know how important that is. Just yelling at him. [The first grader] just froze." On another day, at soccer practice, when the older boy's attention drifted from the sporting activity to his younger brother, who was playing with another little boy, "[the stepfather] kicked the soccer ball as hard as he could – and I saw it – in his stomach. [The older boy] went to the ground in a fetal position. It knocked his breath out. And he couldn't move, and [the stepfather] said, That's what happens when you don't pay attention." And on another occasion, when the stepfather was paddling the younger boy with a plastic cutting board, the board had broken. The grandmother testified that she had talked to the mother and stepfather about their discipline, but to no avail. As the grandmother saw it: "[The mother] stands with [the stepfather]. It doesn't matter how the children are treated. She does not standup for the children."

The grandmother reported to the boys' father that the older boy had been whipped to the point of bruising. The father testified that the older boy told him that the stepfather had used a wooden paddle made out of a "one-by-four" that was approximately sixteen inches long. His stepfather had given him one lick, then his mother had given him two licks. The father took a photograph of the boy's buttocks, which photograph was admitted in evidence after the father authenticated it as accurately reflecting the boy's bruise.

The boys' father testified that he was concerned about the developing "pattern" of abuse toward his children, referring to the following. Since coming into his boys' lives shortly after the divorce, the stepfather had once made the younger boy hold a bar of soap in his mouth for about thirty minutes. Also, the stepfather had been paddling the boys with a plastic cutting board, until that paddle broke; after that, the stepfather had made the wooden paddle. The father described another occasion that had been reported to him – the stepfather had once refused to allow the older boy to come into the house. After playing outside, the boy wanted to come back inside; the stepfather admonished him that he had wanted to play outside, so "play outside." According to the father, the stepfather's conduct toward his boys had made them fearful of him; the boys were "in great depression and oppression from the abuse that

5

was taking place in [their] house and had lost a considerable amount of weight." The father testified that he had never paddled either of his boys, that he believed that paddling children was inappropriate, and that he had tried repeatedly to talk to the boys' mother and stepfather about the stepfather's physical disciplining tactics, but to no avail.

At the time of the hearing, the father was living at his parents' residence. He testified that his boys were happy when with him. He testified that he had the means to provide for their support and maintenance. The grandmother testified about her participation in the care of the boys and said that "we all work together."

The mother testified about the paddling incident in question. She recalled that the older boy had entered a neighbor's house when no one was home, took candy from the house, then lied to her when she questioned him about it. The mother testified that the stepfather used a paddle to give the boy one lick, then she struck her child two times with the paddle. She had not thought at the time that the three strikes they administered were excessive, nor had she thought so when she saw that bruising had appeared. Furthermore, she testified, the photograph of the boy's buttocks had "more color in it, more redness" than what she had seen on the boy after the punishment was administered. She added that the father, who was a photographer,

6

often enhanced photographs. Regarding the stepfather's putting soap in the younger boy's mouth, the mother recalled that the boy was being punished for using profanity. The mother testified that she had known about the cutting board breaking on her older son, recalling that it had broken when the stepfather was administering "a lick or two" to that child.

The mother acknowledged that the father had expressed to her his disagreement with corporal punishment. But she continued to believe, as of the hearing, that striking her children with a paddle was a permissible form of discipline. And at any rate, neither she nor the stepfather had intended for the paddling in question to result in any bruising.

The boys' stepfather also testified. He acknowledged that the boys' father had told him and the mother that he did not want the boys disciplined by corporal punishment; the stepfather recounted that he had responded to the father that, at their own residence, he and his wife would administer whatever discipline they felt was appropriate. The stepfather was a school principal and had administered corporal punishment to middle school students by striking them one or two times with a wooden paddle. He had been reared in a culture of corporal punishment, had thereafter used it to discipline his own children, and had once left a bruise on one of

them. The stepfather admitted that he had "paddled or spanked" his older stepson four or five times, and the younger one maybe twice. He admitting breaking the cutting board on one of the boys, but testified that the board was plastic and purchased at "the Dollar Store," and that the boys immediately laughed about the board breaking. Regarding the "whipping" in question, he admitted striking the older boy "firmly," but was surprised that the single lick had caused a bruise. Further, he claimed that the bruise he had seen on the boy's buttocks was not of the same shape, color, or severity as that depicted by the photograph. The stepfather also admitted putting a bar of soap in the younger boy's mouth.

Nonetheless, the stepfather testified that corporal punishment would no longer be part of any discipline plan at their residence. He testified, "I love the boys. I try to show that with time spent and teaching them things and participating with them in things and hoping to raise them to be fine young men when they grow up." To that end, he had taught them, for example, how to respect their mother, how to ride a bike, how to play soccer, how to fish, how to camp, and how to study.

"In all cases in which the custody of any child is at issue between the parents, there shall be no prima-facie right to the custody of the child in the father or mother. There shall be no presumption in favor of any particular form of custody, legal or

physical, nor in favor of either parent."[5] "In determining the best interest of the child, the judge may consider any relevant factor including, but not limited to: [those enumerated in OCGA § 19-9-3 (a) (3), (a) (4)]."[6] Here, the trial court granted the custody change, citing OCGA § 19-9-3 (a) (3) (F), (O), (P) and OCGA § 19-9-3 (a) (4) (A), (B). These Code provisions concern "[t]he home environment of each parent considering the promotion of nurturance and safety of the child rather than superficial or material factors,"[7] "any recommendation by a court appointed custody evaluator or guardian ad litem,"[8] "[a]ny evidence of family violence or sexual, mental, or physical child abuse or criminal history of either parent,"[9] "the safety and well-being of the child,"[10] and "the perpetrator's history of causing physical harm, bodily injury,

---

[5] OCGA § 19-9-3 (a) (1).

[6] OCGA § 19-9-3 (a) (3), (a) (4).

[7] OCGA § 19-9-3 (a) (3) (F).

[8] OCGA § 19-9-3 (a) (3) (O).

[9] OCGA § 19-9-3 (a) (3) (P).

[10] OCGA § 19-9-3 (a) (4) (A).

9

assault, or causing reasonable fear of physical harm, bodily injury, or assault to another person."[11]

On appeal, the mother maintains that the change in custody was not warranted, asserting that the corporal punishment involved merely isolated incidents of short term discomfort that were neither excessive nor unduly severe. She maintains that the photograph of the boy's bruised buttocks had been color-enhanced and that there was no evidence of an intent to harm either child. Further, she points to the stepfather's testimony that corporal punishment would no longer be imposed upon the boys.

"In ruling upon [the father's] petition, however, the trial judge was not limited to evidence that [the mother] believes supported [her] claims."[12] Rather, the trial judge sat as the finder of fact,[13] and the determination of whether a change in physical custody was warranted involved resolving evidentiary conflicts and issues of witness

---

[11] OCGA § 19-9-3 (a) (4) (B).

[12] *Lurry v. McCants*, 302 Ga. App. 184, 186 (690 SE2d 496) (2010).

[13] See generally *Smith v. Smith*, 281 Ga. 380, 382 (1) (637 SE2d 662) (2006) (explaining that in a bench trial, "the trial court act[s] as finder of fact as well as determiner of the law, and [is] free to ascertain for itself the credibility of the witnesses").

credibility.[14] The trial judge was not required to believe the testimony given by the mother and stepfather, nor to reject the evidence adduced by the father.[15] And as the mother concedes in her appellate brief, the guardian ad litem recommended that the father be awarded primary physical custody of the boys. Because the trial court's change-of-custody ruling is supported under the "any evidence" standard,[16] this court is without authority to overturn it as an abuse of discretion; that portion of the judgment is affirmed.[17]

2. The mother contests the award of attorney fees, pointing out that the trial court included in its order neither a statutory basis for the award nor any findings of

---

[14] See *Scott*, supra; *Smith*, supra.

[15] See *Haskell v. Haskell*, 286 Ga. 112 (1) (686 SE2d 102) (2009) ("It is the duty of the trial judge to resolve the conflicts in the evidence.") (citation and punctuation omitted).

[16] See *Flowers v. Robinson*, 157 Ga. App. 471, 473 (2) (278 SE2d 38) (1981) (determining that, in post-divorce child custody proceeding, trial court did not abuse its discretion in granting change of custody from mother to father in light of evidence that the child's new stepfather frequently hit child, that he "spanked" her with both his belt and a flyswatter on occasion, leaving black and blue marks on her body, that she was in fear of him, and that on occasions when she was with her father or her paternal grandparents she resisted being returned to her mother's home).

[17] *Horn*, supra; *Flowers*, supra.

11

fact on that issue. Regarding attorney fees, the order pertinently provided "that the [mother] shall pay $4,000.00 of [the father's] attorney fees."

The record before us indicates two plausible statutory bases for the attorney fee award. Our Supreme Court in *Viskup v. Viskup*[18] held:

> When there is more than one statutory basis for the attorney-fee award and neither the statutory basis for the award nor the findings necessary to support an award is stated in the order and a review of the record does not reveal the basis of the award, the case is remanded for an explanation of the statutory basis for the award and the entry of any findings necessary to support it.[19]

Code sections 19-9-3 and 19-6-15, each of which authorizes an award of attorney fees, were at issue in this case. In the "Petition for Modification," the father alleged that he was entitled to a change in custody, which the trial court granted under OCGA § 19-9-3. That Code section provides that "*in addition to the attorney's fee provisions contained in Code Section 19-6-15*, the judge may order reasonable attorney's fees. . . ."[20] And Code Section 19-6-15 authorizes a trial court to grant an

---

[18] Supra.

[19] Id. at 106 (3) (citations omitted).

[20] OCGA § 19-9-3 (g) (emphasis supplied).

attorney fee award "[i]n proceedings for the modification of a child support award pursuant to the provisions of this Code section."[21] In the "Petition for Modification," the father sought also a modification of "child support in an amount commensurate with the guidelines established by OCGA § 19-6-15." The trial court modified child support, with a citation to OCGA § 19-6-15.

Although the father has argued that the attorney fee award was authorized under OCGA § 19-9-3, he makes no attempt to demonstrate that OCGA § 19-6-15 (k) (5) was inapplicable. And unlike in *Viskup*, nothing in the record "eliminate[s] OCGA § 19-6-15 (k) (5) as [a] basis of the award."[22] Therefore, we vacate that portion of the judgment awarding the father attorney fees and remand the case to the trial court for an explanation of the statutory basis for the award and the entry of any findings necessary to support it.[23]

3. Finally, the mother states in a footnote within the "Statement of the Facts and the Case" section of her brief: "It is [the mother's] position that the [trial court's

---

[21] OCGA § 19-6-15 (k) (5).

[22] *Viskup*, supra at 106 (3) (eliminating OCGA § 19-6-15 (k) (5) as the basis of the award, noting the language employed in the trial court's order).

[23] See generally *Viskup*, supra; *Lurry*, supra at 190 (2) (b).

judge] should have recused [him]self from this case since [the paternal grandfather] was an employee in that court." But this statement is unaccompanied by any legal argument, any citation of authority, and any assertion that the mother sought from the trial court any ruling concerning recusal. Thus, the mother's "position" is unavailing.[24]

*Judgment affirmed in part and vacated in part, and case remanded with direction. Ellington, P. J., and Branch, J., concur.*

---

[24] See *Chapman v. State*, 290 Ga. 631, 633 (2) (724 SE2d 391) (2012) (noting that "claims not pursued by specific legal argument are deemed to have been abandoned"); *Felix v. State*, 271 Ga. 534, 539, n. 6 (523 SE2d 1) (1999) (explaining that unsupported assertions are deemed abandoned and that "an appealing party may not use its brief to expand its enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of the errors"); *Leone v. Green Tree Servicing*, 311 Ga. App. 702, 705 (5) (716 SE2d 720) (2011) (declining to consider claims of error "predicated on legal arguments that were not presented to the trial court"). See also *Wilcher v. Way Acceptance Co.*, 305 Ga. App. 868, 871 (5) (700 SE2d 879) (2010) (holding that where party failed to raise recusal issue in the trial court, the issue was not properly before appellate court); *Langton v. Dept. of Corrections*, 220 Ga. App. 445, 447 (3) (469 SE2d 509) (1996) (concluding that party's claim of judicial bias was not properly before appellate court, where party failed to raise the issue of judicial bias in the trial court or request recusal); Court of Appeals Rule 25.