**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 11, 2026**

# In the Court of Appeals of Georgia

A25A1681. SMITH v. ARMSTRONG.

DAVIS, Judge.

In this child custody dispute, Delmon Smith appeals from the trial court's order denying his petition to modify custody. On appeal, Smith argues that the trial court erred by (1) finding him in contempt; (2) crediting the guardian ad litem's opinion over his expert's opinion; (3) failing to find that a material change in circumstances had occurred; and (4) awarding attorney fees and expenses under OCGA § 19-9-3(g) to the child's mother, Ciara Armstrong. For the reasons that follow, we affirm.

> When reviewing an order in a child custody case, we view the evidence in the light most favorable to the trial court's decision. We will not set aside the trial court's factual findings if there is any evidence to support them, and we defer to the trial court's credibility determinations. We

review de novo, however, the legal conclusions the trial court draws from the facts.

*Harrison v. Whitaker*, 361 Ga. App. 36 (862 SE2d 597) (2021).

The record shows that Smith and Armstrong are the parents of one minor child, J. S., who was born in 2014.[1] Smith is a resident of Cobb County, Georgia, and Armstrong and J. S. reside in Grapevine, Texas. Following a legitimation and custody action initiated by Smith in 2017, the trial court granted Smith's petition for legitimation, awarded primary physical custody of J. S. to Armstrong,[2] and awarded the parties joint legal custody ("2017 Order"). Specifically, as to joint legal custody, the order stated:

> b) As joint legal custodians, the parties shall participate jointly in the decision-making with respect to all matters affecting the child's growth, welfare, and development, including, but not limited to choice of schools, education, extracurricular activities, summer camps, daycare, medical and dental treatment, treatment or counseling for emotional and behavioral problems, and religious training. In the event the parties

---

[1] Smith and Armstrong were never married to each other, and Armstrong has two other children.

[2] Smith was granted liberal visitation, but the trial court imposed a schedule in the event the parties could not agree on visitation.

cannot come to an agreement regarding any major decisions, [Armstrong] shall have final decision-making authority for the child, and her decision shall be binding upon [Smith]. [Armstrong]'s final decision-making authority shall be used in a reasonable manner and in the best interest of the minor child.

The order also contained the following provision:

l) Each party shall have access to the child's medical and education records[.]... It is further the specific agreement of the parties that each party may make a request for said information directly to any person or entity listed herein, and this provision operates as an ABSOLUTE RELEASE to allow that person or persons to release the information requested for the child. This ABSOLUTE RELEASE shall allow any medical doctor, nurse, psychiatrist, psychologist, health care worker, agent of any hospital, clinic or health care facility, or professional, or principal, teacher, counselor or education professional to release any information on the child to either parent.... It shall not be the duty of one party to furnish the other party with this information, other than providing the appropriate contact information or providing the website, user name and password as set out above, although certainly an exchange of such information is encouraged.

After a separate arbitration proceeding in July 2023, the trial court adopted the arbitrator's award which modified Smith's parenting time but left the other provisions of the 2017 Order unchanged.

In February 2024, Smith filed a petition for modification of custody and contempt, which he amended in July 2024. In his petition, Smith argued that a material change in circumstances had occurred and that a modification of custody was required. Specifically, he alleged that Armstrong was verbally and physically abusive towards J. S., engaged in conduct that alienated J. S. from him, failed to provide for J. S.' well-being and travel needs, and failed to provide a suitable home environment for J. S. Armstrong answered the petition and counterclaimed for a modification of visitation and contempt, alleging in part that the parenting schedule was demanding on J. S. and that Smith violated the 2017 order by interfering with her legal custody rights.[3] Specifically, she alleged that Smith took J. S. to see a psychotherapist without consulting her and that Smith refused to provide her with any information relating to the evaluation or treatment despite her numerous requests. The trial court appointed Marcy Millard to serve as guardian ad litem and to investigate the case, and the matter subsequently proceeded to a two-day hearing.

At the hearing, Smith testified that Armstrong was abusive to J. S., she neglected him, and J. S.' performance in school deteriorated because of the abuse.

---

[3] Armstrong raised other claims as to other violations of the 2017 Order, which the trial court summarily denied.

Smith said that J. S. told him that Armstrong "slapped" him "with full force." Smith also testified that J. S. was fearful of Armstrong and that he had frequent arguments with her. Smith said that when he confronted Armstrong about J. S.' accusation that she slapped him, Armstrong explained that J. S. had been "careless, rude, and inattentive because he couldn't go outside[,]" and that he made a "disrespectful" gesture towards her, and so she "pushed" his head. Armstrong also told Smith that she took away J. S.' video games, prohibited from playing outside as a disciplinary action, and that it did not appear that J. S. was affected by the discipline.

Smith later contacted Anique Whitmore, a licensed psychotherapist, about his suspicions that Armstrong was verbally and physically abusive towards J. S. He admitted however, that before he had J. S. evaluated by Whitmore in April and May 2024, he did not notify or consult with Armstrong about the evaluation. He further testified that when Armstrong learned about the evaluation and asked him for the name of the evaluator, the therapist, and when the therapist had contacted J. S., he refused Armstrong's requests and told her to speak with an attorney to determine the "best approach going forward."

Armstrong denied that she had abused any of her children, and she denied that she had neglected J. S. Armstrong acknowledged that J. S.' performance in school had deteriorated at one point, but he had been diagnosed with ADHD, and his behavior and performance in school greatly improved after he began to take medication. She also testified that Smith did not raise any concerns of possible abuse with her and that she first learned that Smith had taken J. S. to see Whitmore after she was served with Smith's petition. She testified that she tried obtaining information about Whitmore's evaluation from Smith but that she ultimately had to hire counsel to receive the information. She also tried to speak with Whitmore about the evaluation, but Whitmore told her that she could not respond to her inquiry and that her reports belonged to Smith's counsel.

Whitmore also testified at the hearing, and she stated that as part of her work in this case, she interviewed J. S. as well as Smith and his wife, but she did not meet with Armstrong because it was her "standard practice" not to meet with suspected abusers. She stated that,

> based on what [J. S.] shared with [her] and in the manner in which he shared his body language, the words he used, the descriptors he used, the context in which he used them in, and how he had responded since those

days is definitely a sign of maltreatment, abuse, physical and emotional, of how he received it.

Millard also testified at the hearing and stated that she spoke with J. S., Whitmore, three of J. S.' teachers, Armstrong's husband, J. S.' pediatricians, J. S.' half-siblings, Smith, and Smith's wife, and conducted home visits as part of her investigation. She also reviewed recordings, pictures, videos, J. S.' grades, and insurance information. As to Smith's allegations, Millard testified that she did not believe that J. S. was scared of Armstrong and that Armstrong disciplines J. S. "appropriately." She further testified that although Armstrong pushed J. S.' head, which was "not the best parenting decision," she stated that it did not rose to the level of abuse. She also testified that a change in custody was not in J. S.' best interest and that he has a stable family dynamic residing with Armstrong.

Following the hearing, the trial court entered an order denying Smith's petition to modify custody and granting Armstrong's petition for contempt. Specifically, the court determined that Smith did not show that there was a material change in circumstances that warranted a modification in custody because he failed to show that Armstrong abused or neglected J. S. In so ruling, the court expressly stated that

Millard's investigation was "thorough, unbiased, and credible[,]" while Whitmore's testimony "lacked this same level of credibility" and that Whitmore's opinions were biased towards Smith. As to the contempt issues, the trial court denied Smith's various allegations of contempt, but it granted Armstrong's petition for contempt based on her allegation that Smith violated her legal custody rights. Specifically, the court stated:

> The Court does find [Smith] in willful contempt for interfering with [Armstrong]'s legal custody rights, and for his actions with Ms. Whitmore (specifically, taking the child to see a therapist and evaluating child without consulting [Armstrong] or getting [Armstrong]'s approval, and denying [Armstrong] access to relevant information, reports, and other records related to Ms. Whitmore all is violation of the parenting plan and court order in effect at that time).

The court also ordered Smith to pay a total sum of $25,000 in attorney fees and expenses under OCGA § 19-9-3(g), $20,000 of which was for a portion of the fees that Armstrong incurred as a result of the action and $5,000 as a reallocation of the fees Armstrong paid for Millard's services. This appeal followed.

1. First, Smith argues that the trial court erred by finding him in contempt of the 2017 order by hiring Whitmore and having her conduct an evaluation of J. S. because

8

Whitmore was hired in anticipation of litigation. We discern no abuse of discretion in this regard.

"To hold in contempt, the court must find that there was a wilful disobedience of the court's decree or judgment." *Park-Poaps v. Poaps*, 351 Ga. App. 856, 859(1) (833 SE2d 554) (2019). "The trial court's discretion in contempt matters is broad, and its discretion will be upheld if there is any evidence to support it." Id.

Here, as recounted above, the 2017 order awarded the parties joint legal custody and required them to jointly participate in decision-making with respect to all matters affecting J. S.' welfare, but Armstrong was to have final decision-making authority. Moreover, the order gave each party access to J. S.' medical records, including any records kept by a "psychiatrist, psychologist, health care worker, agent of any hospital, clinic or health care facility, or professional." And critically, the order provided that although it was not the duty of one party to furnish the records to the other, the parties were required to provide each other with the "appropriate contact information" or website, user name, and password to access the information. The trial court found Smith in willful contempt of the 2017 order because he had J. S. evaluated by Whitmore without first notifying Armstrong and obtaining her consent. The court

9

further found that Smith violated the 2017 order by denying Armstrong access to the information and reports concerning Whitmore's evaluation when Armstrong requested the information from him.

We conclude that the trial court's findings are supported by the evidence in the record. At the hearing, Smith admitted that he did not discuss having J. S. evaluated with Armstrong before Whitmore conducted her evaluation and that he refused to provide Armstrong with the name of the evaluator when Armstrong requested the information from him. Instead, Smith told her to consult with an attorney for the "best approach going forward." Because the record contains evidence that Smith's conduct was a willful violation of the order, the trial court did not abuse its discretion in granting Armstrong's petition to hold Smith in contempt on this basis. See *Froehlich v. Froehlich*, 297 Ga. 551, 554–55(3) (775 SE2d 534) (2015) (trial court did not abuse its discretion by finding that the husband willfully violated the divorce decree where the trial court's findings were supported by the evidence in the record).

Still, Smith asserts a number of arguments to support his claim that the trial court erred by holding him in willful contempt of the 2017 order. Specifically, he argues that he was not in willful contempt of the order because Armstrong ultimately

obtained Whitmore's reports, it was Whitmore's standard practice not to speak with alleged abusers, policy considerations overrode compliance with the 2017 order, and the trial court contradicted itself because the court denied a previous petition by Armstrong to hold him in contempt based on Whitmore's reports. But none of these claims are meritorious. The fact that Armstrong ultimately obtained Whitmore's reports, which only occurred after Armstrong obtained legal assistance, has no bearing on Smith's failure to provide Armstrong with Whitmore's contact information as required by the 2017 order. Likewise, the fact that Whitmore had a standard practice not to speak with alleged abusers also did not excuse Smith from complying with the 2017 order by providing Armstrong with Whitmore's contact information.

Moreover, Smith's argument about policy considerations that trial courts should take into consideration in cases like the instant case is also unavailing. Specifically, Smith contends that (1) Whitmore was hired as an expert witness in anticipation of litigation and not as a treating physician, and therefore he cannot be found in willful violation of the 2017 order; (2) Armstrong should have been required to comply with the provisions of OCGA § 9-11-26[4] to obtain Whitmore's report since

[4] OCGA § 9-11-26 generally governs the methods by which a party may obtain discovery during litigation.

Whitmore was hired in anticipation of litigation; and (3)his actions were justified because he was attempting to assess whether the abuse allegations were true, and so punishing him would tie the hands of parents attempting to stop abusers. However, the question of whether J. S.' sessions with Whitmore counted as "counseling for emotional and behavioral problems" under the 2017 order is a matter of credibility left for the trial court as factfinder. And again, the fact that Smith hired Whitmore in anticipation of litigation does not excuse him from complying with the trial court's instructions in the 2017 order. Furthermore, it is particularly the role of the trial court to assess questions of credibility and to piece together the facts and testimony in the record to determine what actually happened in a custody dispute, and that role includes assessing the motivations of the parties and whether allegations of abuse are credible. See *Hooper v. Townsend*, 362 Ga. App. 532, 541(12) (868 SE2d 286) (2022) ("We are mindful that the Solomonic task of assigning the custody of children lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility.") (citation modified). And critically, Smith's policy arguments would contravene our long-standing policy that a "trial court has the power to see that there be compliance

with the intent and spirit of its decrees[.]" *Cowart v. Ga. Power Co.*, 362 Ga. App. 574, 583(3) (868 SE2d 241) (2022) (quotation marks omitted).

Finally, Smith's argument that the trial court contradicted itself because it previously found that he was not in willful contempt for failing to provide Armstrong with Whitmore's report is a non-starter. During discovery, Armstrong had a filed a "motion in limine and/or motion for contempt," seeking to exclude from evidence two of Whitmore's reports that were not timely provided during discovery, or to hold Smith in contempt for failing to comply with the discovery order. In denying the motion, the trial court determined that exclusion of the evidence was not warranted because Armstrong ultimately received the reports and that Smith did not willfully violate the discovery order because Armstrong did not timely respond to Smith's request to enter into a confidentiality order. But there is nothing in the trial court's order on that motion that can be construed to suggest that Smith did not violate the provisions of the 2017 order by failing to provide Armstrong with Whitmore's contact information.

Thus, none of Smith's arguments are meritorious, and for the reasons stated above, the trial court did not abuse its discretion by finding that Smith willfully violated the 2017 order.

2. Next, in two related claims, Smith argues that the trial court erred by denying his petition to modify custody. He argues that the evidence showed that there was a material change in circumstances to warrant a modification of custody because Armstrong physically abused J. S. and his performance in school subsequently deteriorated, and the trial court erred by crediting Millard's testimony over Whitmore's testimony. We disagree.

"We review a custody modification order for an abuse of discretion." *Harrison*, 361 Ga. App. at 37(1). It is well settled that

> a change of custody may be granted only if a new and material change in circumstances affects the child. The trial court must find that a material change in circumstances has taken place before it can consider whether modification of custody is in the child's best interests. Accordingly, the trial court must make a threshold finding that there has been a material change in circumstances before it considers what is in the child's best interests.

Id. "Whether particular circumstances warrant a change in custody is a fact question determined under the unique situation in each individual case." Id. And critically, "[t]his Court will not set aside the trial court's factual findings if there is any evidence to support them, *and we defer to the trial court's credibility determinations*." *Finch v. Walden*, 372 Ga. App. 115, 120(2) (903 SE2d 802) (2024) (emphasis supplied).

Here, Whitmore testified that she spoke with J. S., Smith, and Smith's wife, and that based on what J. S. shared with her, she concluded that J. S. was being subjected to physical and emotional abuse and maltreatment. Millard, on the other hand, testified that she spoke with J. S., Whitmore, three of J. S.' teachers, Armstrong's husband, J. S.' pediatricians, J. S.' half-siblings, Smith, and Smith's wife, and conducted home visits as part of her investigation. She also reviewed, recordings, pictures, videos, J. S.' grades, and insurance information. Based on her investigation, Millard concluded that Armstrong disciplines J. S. "appropriately," and that although Armstrong pushed J. S.' head, which she said was "not the best parenting decision," it did not rise to the level of abuse. She further testified that it was in J. S.' best interest that Armstrong retain primary physical custody of J. S. In light of this evidence, the trial court determined that Smith failed to show that

Armstrong was abusive to J. S. and had neglected him and that no material change in circumstances had occurred to warrant a modification in custody. In so ruling, the trial court made an express credibility determination that Millard's investigation was thorough, unbiased, and credible and that Whitlock's investigation lacked the same level of credibility.

In light of this record, we discern no abuse of discretion in the trial court's determination that Smith failed to show that a material change in circumstances had occurred so as to warrant a modification of custody. The trial court's determination that Smith failed to show that Armstrong abused and neglected J. S. is supported by Millard's testimony as to what she discovered in her investigation of the case. And although Smith vehemently argues that the trial court erred by crediting Millard's testimony over Whitmore's testimony, as stated above, we defer to a trial court's credibility determinations. *Finch*, 372 Ga. App. at 120(2). Accordingly, we conclude that the trial court did not abuse its discretion in this regard. Compare *Kuehn v. Key*, 325 Ga. App. 512, 516–17(1) (754 SE2d 103) (2014) (affirming the trial court's determination that a material change in circumstances had occurred to warrant a modification of custody, where the evidence showed that the mother's new husband

kicked a soccer ball into one child's stomach which knocked him to the ground in the fetal position and paddled the other child with plastic cutting board, the grandmother observed bruises on one child's body, and the guardian ad litem testified that it was in the best interest that the father be awarded primary physical custody of the children).

3. Finally, Smith argues that the trial court erred by awarding Armstrong $25,000 in attorney fees and expenses under OCGA § 19-9-3(g) because the court erred by finding him in contempt, crediting Millard's testimony over Whitmore's testimony, failing to find a material change in circumstances, and failing to make the necessary factual findings to support the attorney fees award. This claim of error, however, is meritless.

First, to the extent that Smith argues that the attorney fees award was improper because the trial court erred by finding him in contempt, improperly credited Millard's testimony over Whitmore's testimony, and failing to find that a material change in circumstances had occurred, for the reasons stated above in Divisions 1 and 2, Smith cannot show an abuse of discretion, and thus his claim that the attorney fees award was improper on this basis necessarily fails.

17

Second, as to Smith's claim that the trial court failed to set forth necessary findings of fact to support the attorney fees award, this claim also fails. OCGA § 19-9-3(g) provides in part that a judge

> may order reasonable attorney's fees and expenses of litigation, experts, and the child's guardian ad litem and other costs of the child custody action and pretrial proceedings to be paid by the parties in proportions and at times determined by the judge. Attorney's fees may be awarded at both the temporary hearing and the final hearing.

In construing this statute, we have noted that a trial court has "wide discretion" to award attorney fees. *Davis v. Tyalor*, 370 Ga. App. 837, 848(7) (898 SE2d 574) (2024). And although generally an attorney fees award cannot be based upon guesswork or speculation, we have been clear that, unlike an attorney fees award under OCGA §§ 9-15-14, 13-6-11, and 19-6-2, an attorney fees award under OCGA § 19-9-3(g) does not require the trial court to make specific factual findings. Id. at 849(7)(c).[5] Thus, Smith's claim that we must vacate or reverse the attorney fees award on this basis also fails.

---

[5] For these reasons, Smith's reliance on our prior decisions in *Spirnak v. Meadows*, 355 Ga. App. 857 (844 SE2d 482) (2020) and *Rimmer v. Tinch*, 324 Ga. App. 65 (749 SE2d 236) (2013), is misplaced because those cases involved an attorney fees award under OCGA §§ 9-15-14 and 19-6-2.

Nevertheless, we note that the record still contains evidence of the basis of the award. Armstrong's counsel testified that he has been licensed to practice law in Georgia since 2008 and that, since that time, his practice has focused primarily on family law matters. He also testified that his hourly rate is $385, which he said was reasonable in light of his experience, and that his paralegal's hourly rate is $150, which was also reasonable. Counsel also presented copies of invoices of the fees Armstrong incurred which totaled $23,548 and did not include fees pertaining to the two-day hearing. In the attorney fees award, the trial court ordered Smith to pay Armstrong a total amount of $25,000, $20,000 of which was a reimbursement for a portion of the fees that Armstrong incurred as a result of the action, and $5,000 as a reallocation of the fees Armstrong paid for Millard's services. In crafting its award, the court determined that the award was "proper and appropriate considering the facts, circumstances and evidence presented, pursuant to OCGA § 19-9-3(g)." Accordingly, contrary to Smith's claim, the attorney fees award in this case is supported by the evidence in the record. See *Davis*, 370 Ga. App. at 849(7)(c) (holding that there was

a sufficient factual basis of the attorney fees award under OCGA § 19-9-3(g) where counsel presented a statement of the fees incurred and a supporting affidavit).[6]

Accordingly, for the foregoing reasons, we affirm the trial court's order denying Smith's petition to modify custody.

*Judgment affirmed. Rickman, P. J., and Gobeil, J., concur.*

---

[6] And to the extent that Smith challenges the reasonableness of the attorney fees award, that claim has been waived for appellate review. We have rejected challenges to the reasonableness of an attorney fees award where the appellant did not dispute the fees in the trial court or ask the trial court for further hearing on the matter. See, e.g., *Day v. Mason*, 357 Ga. App. 836, 845–46(5)(b) (851 SE2d 825) (2020) (concluding that the appellant's challenge to the reasonableness of an attorney fees award was waived for appellate review where the appellant did not question counsel in the trial as to the reasonableness of the fees or seek further hearing). At the hearing, the trial judge asked Smith whether he wanted to question Armstrong's counsel about the fees, and he replied, "No, I'm not going to cross him," and he did not request further hearing on the matter. Therefore, Smith has waived any challenge to the reasonableness of the attorney fees award in this matter.