S02A1712. REECE v. SMITH.
(577 SE2d 583)

HINES, Justice.

George Reece appeals from rulings of the trial court: directing a verdict in favor of Smith on Reece's claim that he owned all interests in a tract of land that Smith sought to have partitioned; entering judgment on the report of the partitioners; and awarding attorney fees. For the reasons that follow, we affirm.

In 1980, Tommy Chappell ("Chappell") owned a 7/8 undivided interest in a certain tract of land (the "tract"), containing approximately 60 acres. The remaining 1/8 undivided interest was owned by Chappell's cousins, the Pointers. In April 1980, Chappell conveyed his interest in certain 11.91 acres of the tract to Reece, and later conveyed his interest in another, unconnected portion of the tract to Reece (Reece's "parcels"). In January 1981, Chappell conveyed his 7/8 undivided interest in the remainder of the tract to T. J. Chappell ("T. J."), his minor son. Construing the evidence in support of non-movant Reece, Reece used the entire tract after his purchases, not merely his parcels. In 1984, Reece received a quitclaim deed from the Pointers for their 1/8 undivided interest in the tract; Reece then owned all interests in the parcels he acquired from Chappell, and a 1/8 interest

in the remainder of the tract.

In 1998, Gary Smith approached Reece about buying the tract, or a portion thereof. However, Smith discovered that the county deed records showed that Reece owned only a 1/8 undivided interest in the tract. Smith then contacted Chappell about purchasing the 7/8 undivided interest from T. J. In November 1998, T. J. conveyed his interest in the tract back to his father. Chappell conveyed this undivided interest to Smith on April 22, 1999. Smith had previously secured complete title to 5.81 acres of the tract.[1] Thus, Smith and Reece each held complete title to separate parcels that had once been part of the larger tract. Additionally, Smith had record title to a 7/8 undivided interest in the remainder of the tract; Reece held the other 1/8 undivided interest.

In 1999, Smith sought a statutory partition of that portion of the tract in which he and Reece both held interests. See OCGA § 44-6-160 et seq. Reece counterclaimed, contending that he held all interests in the land that Smith sought to have partitioned by virtue of adverse possession and certain conveyances.[2] Reece's counterclaim was tried before a jury, and the trial court granted Smith's motion for directed verdict on all issues in the counterclaim. The court later entered judgment on the report of the partitioners.

1. Reece argues that a directed verdict should not have been granted on his claim that he acquired all interests in the disputed portion of the tract by adverse possession. Reece claims that he possessed the land for a period of seven years while holding written evidence of title to the entire tract, i.e. the 1984 quitclaim deed from the Pointers. See OCGA § 44-5-164. However, under OCGA §§ 44-5-164 and 44-5-170, the seven-year period of time does not run against the rights of a minor during his minority. During the period from the 1984 Pointers' conveyance until T. J.'s eighteenth birthday in August 1994, the 7/8 interest in the property to which Reece did not hold title was held by a minor, and the seven-year period did not run. Nor did seven years pass between 1994 and the filing of the partition action. Although Reece contends that some actions of T. J. after he reached majority "ratified" Reece's earlier possession, the simple fact is that under the statutes, no adverse possession claim can be based on the period of time in which T. J. was a minor.[3]

2. Reece also attempts to show that he had title to the tract by virtue of an oral contract and an unrecorded deed. Directed verdict on these issues was also proper. Reece contends that he and Chappell

---

[1] Reece had previously conveyed his interest in the 5.81 acres to the Pointers, from whom Smith acquired title.

[2] Reece also sought an equitable partition under OCGA § 44-6-140.

[3] We need not address the other issues Reece raises as to adverse possession.

entered into an oral agreement for the sale of the tract from Chappell to Reece. This alleged agreement was purportedly made during the period of time that the land was held by T. J., and Reece argues that when Chappell acquired the land in 1998, equity operated so as to vest title in Reece, pursuant to the earlier agreement. See *Dillard v. Brannan*, 217 Ga. 179 (2) (121 SE2d 768) (1961). This concept is

> known as estoppel by deed, which is codified in Georgia at OCGA § 44-5-44. Under this doctrine a grantor who conveys by warranty deed an interest that he does not then own, but later acquires, will be estopped to deny the validity of the first deed. It is generally understood, however, that this doctrine cannot be used to transfer title or to cure flaws in the legal requirements for the creation of a property interest.

*Yaali, Ltd. v. Barnes & Noble, Inc.*, 269 Ga. 695, 697 (2) (506 SE2d 116) (1998). First, no effective conveyance from Chappell to Reece is presented; all that is asserted is an oral agreement, which does not satisfy the statute of frauds. See OCGA § 13-5-30 (4). Second, to the extent that any agreement between Chappell and Reece is enforceable, it is enforceable as to Chappell. Although Reece stated in his first pleading that he believes that Chappell is an indispensable party, Reece has never sought to join Chappell in the suit. See OCGA § 9-11-19.

Similarly, although Reece contends that he possessed a 1997 deed from T. J. conveying to Reece his interest in the tract, no such document was entered into evidence.[4] To the extent that the contents of the document were put before the jury, it is undisputed that the price stated in the document was "_____ dollars" (i.e. a blank space followed by the word "dollars"). The document contains nothing that would furnish a key to determining the consideration for the land. Consequently, the document is not enforceable to transfer title, see *Muller v. Cooper*, 165 Ga. 439, 441-442 (141 SE 300) (1927), and does not serve as evidence that Reece had title to the tract beyond that which he acquired in the recorded deeds.

3. Reece contends that the trial court should not have entered

---

[4] A document was identified at trial as Defendant's Exhibit 14, and although not tendered into evidence, appears to be a photocopy of what Reece contended was a conveyance from T. J. to Reece. It was stated in testimony that the document read: "I, T. J. Chappell, sell and convey any and all rights and every interest to the property located on Poole Creek Road in Clayton, Georgia, and in Rabun County, to George M. Reece, for the sum of _____ dollars." No amount was set forth. T. J. denied executing any such document, and testified that he signed a note for $1,000, and that at the same time also signed a blank sheet of paper at Reece's request "for security reasons." It is uncontested that there is no recorded conveyance from T. J. to Reece.

judgment accepting the report of the partitioners as the partition was not a fair and equitable division of the property.[5]

(a) Reece complains that the partitioners left a structure known as the "old homeplace" astride a boundary line between his property and Smith's, and that the road he has used to access the first parcel of his property is now on Smith's land and is closed to him. However, these conditions are not due to the partition, and the line drawn by the partitioners is in an entirely different portion of the tract than the "old homeplace" and the road in question. In fact, the "old homeplace" has been astride a boundary line since 1980, when Reece decided what piece of land to buy from Chappell. Also, the first parcel Reece acquired has access by an easement set forth in his 1980 deed.[6] Although Reece has used a different road for ingress and egress to his first parcel, that road is one in which he does not have any recorded right to traverse.[7] It is not the responsibility of the partitioners or the court to redraw the boundaries of the property Reece purchased to accommodate the choices he made concerning those boundaries, or to ratify the actions he took on land belonging to the Chappells in the years prior to the partition.

(b) Reece argues that the partition wrongly assumes that a strip of land lying between his first parcel and a piece of property outside the tract was part of the undivided tract; Reece contends that this strip should be considered his in toto.[8] The property outside the tract was formerly owned by Craft. Reece claims that a boundary line agreement signed by Craft, Reece, and Chappell shows that he owns this strip. However, at the trial on Reece's counterclaim, Chappell denied signing the document and a handwriting expert testified that in his opinion Chappell's signature had been forged. Further, Chappell's alleged signature was at a time when T. J., not his father, owned the land. Although Reece procured a quitclaim deed from Craft to the strip of land between his parcel and the fence along the edge of Craft's property, as the trial court noted, Craft averred that she never had any property interest in the land on the Chappell side of the fence, and her quitclaim deed conveyed no such interest. The boundaries of Reece's parcel used to partition the tract were in accord

---

[5] This issue was tried before the court, apparently on Reece's request for an equitable partition under OCGA § 44-6-140. The statutory partition had already been acted upon and the report of the partitioners filed with the court. The court apparently accepted the partition in the report as the court's equitable partition.

[6] Reece's second parcel has access by a county road, which the court noted had not been shown to have been abandoned.

[7] As the trial court pointed out, any attempt to establish an easement over this road by prescription fails for the same reason Reece's claim of adverse possession fails. See Division 1, supra.

[8] Essentially, it was this strip that was allocated by the court to Reece as his share of the undivided portion of the tract.

with the description of the parcel in Reece's 1980 deed and associated plat, and the trial court did not err in determining that the partition was fair and equitable.

4. Finally, Reece appeals the trial court's award of attorney fees to Smith under OCGA § 9-15-14 (a). This Court has jurisdiction over this award as the application for attorney fees was made within 45 days of the denial of the motion for new trial. See *Fairburn Banking Co. v. Gafford*, 263 Ga. 792 (439 SE2d 482) (1994); *Stancil v. Gwinnett County*, 259 Ga. 507, 508 (384 SE2d 666) (1989).

The trial court found that while Reece asserted in his earliest pleading that Chappell was an indispensable party, he made no effort to either join Chappell in this action, or to separately seek specific performance of an oral agreement between himself and Chappell. The court also found that throughout the litigation, Reece attempted to defeat the partitioning by contending that Smith had acquired his interest in the property illegally, and that his contentions so lacked any justiciable issue of law or fact that it could not be reasonably believed that a court would accept them. See OCGA § 9-15-14 (a).

An award under OCGA § 9-15-14 (a) must be sustained if there is any evidence to support it. As noted in Division 2, supra, any agreement between Chappell and Reece, without some further action on Reece's part, did not affect Smith's claim. And the trial court was correct that "[a] defendant co-tenant cannot defeat partition on the ground that the co-tenant seeking partition acquired his interest illegally from a third person who is not a party to the case." *Gaulden v. Mills*, 240 Ga. 4 (239 SE2d 353) (1977). The court did not err in awarding attorney fees under OCGA § 9-15-14 (a).

*Judgments affirmed. All the Justices concur.*

DECIDED FEBRUARY 24, 2003 —
RECONSIDERATION DENIED MARCH 28, 2003.

*Adam & Talley, James M. Adam,* for appellant.
*McClure, Ramsay, Dickerson & Escoe, Allan R. Ramsay,* for appellee.