S06A0869. SMITH et al. v. SMITH et al.
(637 SE2d 662)

HINES, Justice.

This is an appeal from the setting aside of a deed to part of a family farm in Pierce County and the partitioning of the farmland among family members. For the reasons that follow, the judgments setting aside the deed and partitioning the farmland are affirmed.

Oswell Smith ("Mr. Smith") and his sons, Walter David Smith ("David") and Terry Smith ("Terry"), operated a farm in partnership on a family-owned 153-acre tract of land in Pierce County; each of the sons claimed title to a third of the land, with Mr. Smith and his wife Kathryn ("Ms. Smith") together having the remaining third.[1]

Mr. Smith controlled the farm's operation until he developed Alzheimer's disease in the early 1990's. At first, he continued to live on the farm, but later he moved to a nursing home. At the nursing home, on October 5, 1995, Mr. Smith and Ms. Smith conveyed their "one-third (1/3) undivided fee simple interest" in the land to David's

---

[1] The record discloses a deed executed on September 13, 1974 conveying the farmland to Mr. Smith, David, and Terry, and then a deed executed the following day from Mr. Smith to Ms. Smith granting her an interest in the farmland.

wife, Debra Sue Smith ("Debra Sue").[2] Terry learned about the conveyance of the farmland to Debra Sue in April 1996.

In August 1996, Terry filed suit against David and Debra Sue seeking, inter alia, to set aside the conveyance of Mr. Smith to Debra Sue, an accounting of the farm assets, and a partitioning of the land;[3] Mr. Smith died and Ms. Smith was added as a party defendant.[4] Following a bench trial, the superior court, on May 23, 2001, issued an order setting aside the conveyance from Mr. Smith to Debra Sue on the basis that at the time of execution of the deed, Mr. Smith lacked the requisite mental capacity; finding the doctrine of "after-acquired property" inapplicable; finding that Terry was entitled to recover a portion of the money that he contributed to the operation of the farm and awarded him $15,000; and directing that the farmland be equitably divided by the parties, and in the event that the parties were unable to agree among themselves on a satisfactory division, the court would undertake the partitioning. The parties could not agree on the division of the farmland, and after consideration of the evidence and arguments of counsel, on July 15, 2005, the superior court issued an order awarding undivided interests in the farmland to all of the parties and partitioning the real property into separate tracts for them.[5] Defendants David, Debra Sue, and Ms. Smith (collectively "defendants") appeal the partition order as well as the earlier order setting aside the conveyance from Mr. Smith and awarding money to Terry.

1. The defendants contend that the superior court erred in setting aside the conveyance because Terry failed to prove Mr. Smith's incompetence at the time of execution of the deed in that four witnesses who testified to his incapacity were not physicians and were not properly qualified as medical experts, and there was no

---

[2] At that time, Mr. and Ms. Smith also executed other deeds regarding their home and rental property.

[3] The suit was originally filed in Bacon County and transferred to Pierce County.

[4] Also, David and Debra Sue filed a counterclaim against Terry asking for an accounting and for damages for injuries stemming from an alleged physical attack upon them by Terry. The portion of the counterclaim asserting physical injury from Terry was later voluntarily dismissed without prejudice.

[5] In its order, the superior court expressly found that the parties failed to carry their respective burdens of proof regarding separate interests in or ownership in the estate property; therefore, it deemed all real estate and improvements to be the property of the estate, except as other interests were or had been established by deed or prior court rulings; the total real estate and improvements had a fair market value of between $280,000 and $290,000; by way of intestate succession or deed, Terry had an undivided interest of 7/18, David had an undivided interest of 7/18, Debra Sue had an undivided interest of 3/18, and Ms. Smith had an undivided interest of 1/18; and the parties elected to present the family farm to the court for partitioning without providing a survey, but rather introduced into evidence aerial photographs to enable the court to draw property lines on such photographs.

evidence of Mr. Smith's incompetency at the precise time of execution of the deed. But, the complaints are unavailing.

Each of the four witnesses in question was either a present or former registered nurse or licensed practical nurse who provided care for Mr. Smith during his bout with Alzheimer's disease. The law does not require that only physicians be allowed to give testimony regarding a medical issue, but permits others with certain training and experience to testify on issues within the scope of their expertise, and a licensed practical nurse or registered nurse is qualified to testify as an expert witness within the areas of his or her expertise. *Hunter v. State*, 192 Ga. App. 675 (2) (385 SE2d 764) (1989). As to any failure to qualify the witnesses as experts, the question of whether a person possesses the qualifications as an expert witness rests entirely in the sound discretion of the trial court. Id. In this case of a bench trial, the trial court acted as finder of fact as well as determiner of the law, and was free to ascertain for itself the credibility of the witnesses. What is more, even a lay witness may give evidence on the question of capacity as long as the witness gives sufficient facts to form the basis of his or her opinion. *McGee v. Ingram*, 264 Ga. 649, 651 (2) (448 SE2d 439) (1994); *O'Kelley v. State*, 175 Ga. App. 503, 507 (3) (333 SE2d 838) (1985).

The witnesses testified in some detail about their care of Mr. Smith and their observations about his mental state and his apparent lack of capacity. One who assisted Mr. Smith regularly in a day program for Alzheimer's patients prior to his entry into the nursing home testified that Mr. Smith did not recognize his own sister, who was also in the program, and that by the time he went to the nursing home, he could not even sign his own name.[6] Another witness who provided Mr. Smith with home care services and later was responsible for his direct care at the nursing home testified that Mr. Smith, who had been an emergency admission, was "chronically disoriented"; "had Alzheimers dementia"; did not "know when he needed to use the bathroom"; "had to be cued a lot of times just to eat"; "sometimes he required feeding"; "required constant redirection and reorientation"; and "not only had dementia of the Alzheimers type, but he also had psychotic features with it where he was actually delusional at times." Yet another witness testified that Mr. Smith was so disoriented that he thought that his wife was his mother.

As to the defendants' complaint that such evidence of lack of capacity did not address specifically the time of execution of the deed, it is not essential to establish incapacity by someone who was present when the document was signed or who saw the grantor on the day

---

[6] Mr. Smith was a college graduate and had retired after a long teaching career.

that the deed was executed because evidence about the state of mind of the grantor prior to and subsequent to the date of the execution of the document is illustrative of the incompetency of the grantor at the time of execution. *Kievman v. Kievman*, 260 Ga. 853 (1) (400 SE2d 317) (1991). Moreover, when incapacity is shown to exist prior to the execution of the document and it is further shown that this condition continues for a period of time subsequent to the date of execution, it is evidence showing incapacity at the time of execution. Id. See also *Hansford v. Robinson*, 255 Ga. 530, 531 (2) (340 SE2d 614) (1986); *Fletcher v. Fletcher*, 242 Ga. 158, 159 (1) (249 SE2d 530) (1978).

The question of a grantor's mental capacity to execute a deed is a question of fact for the trier of fact. *Top Quality Homes v. Jackson*, 231 Ga. 844, 846 (204 SE2d 600) (1974); *Mullis v. Mullis*, 245 Ga. App. 845, 846 (2) (539 SE2d 189) (2000). And in a bench trial, the trial court sits as the trier of fact and its findings cannot be set aside unless they are clearly erroneous; therefore, the superior court's finding of Mr. Smith's lack of capacity at the time of execution of the deed to Debra Sue must be affirmed if there is any evidence to support it. *James F. Nelson, Jr. Family Ltd. Partnership v. Miller*, 267 Ga. 466, 467 (479 SE2d 737) (1997). As has been detailed, there is ample evidence to support the finding.

2. Defendants next contend that even if the deed to Debra Sue was set aside, "under the doctrine of after-acquired property, [Ms. Smith's] one-third of one-sixth (one eighteenth) would vest in Debra Sue,"[7] and the superior court erred in finding that such doctrine was inapplicable. They argue that the superior court's finding of inapplicability was erroneously based on Terry's assertion that there was a parol agreement with Mr. Smith that he would leave the farm to his sons for the consideration of their services, but that Terry failed to prove the existence of such an agreement. However, pretermitting any question of such a parol agreement, application of the doctrine is inappropriate for a more basic reason; the circumstances of this case do not lend themselves to its application.

The concept of "after-acquired property" or estoppel by deed is codified in OCGA § 44-5-44,[8] and provides that a grantor who conveys

---

[7] It appears that this calculation of Ms. Smith's one-sixth interest in the property is premised upon the conclusion that Mr. Smith possessed a one-sixth or three-eighteenths fee simple interest, and that upon his death such interest passed by intestacy to his wife and sons, and the parties do not dispute that if the conveyance from Mr. Smith to Debra Sue is determined to be invalid, Mr. Smith's interest passes by intestacy; therefore, it is unnecessary to address the correctness of the premise, and consequently, the nature of Mr. Smith's property interest.

[8] OCGA § 44-5-44 states:
The maker of a deed cannot subsequently claim adversely to his deed under a title acquired after the making thereof. He is estopped from denying his right to sell and convey the property treated in the deed.

by warranty deed an interest that the grantor does not then own, but later acquires, is estopped to deny the validity of the first deed. *Reece v. Smith*, 276 Ga. 404, 406 (2) (577 SE2d 583) (2003); *Yaali, Ltd. v. Barnes & Noble*, 269 Ga. 695, 697 (2) (506 SE2d 116) (1998). However, this doctrine cannot be used to transfer title or to remedy flaws in the legal requirements for the creation of a property interest. *Reece v. Smith*, supra at 406 (2); *Yaali, Ltd. v. Barnes & Noble*, supra at 697 (2). Here, there is no question of Ms. Smith conveying anything that she did not then own, i.e., she granted to Debra Sue her ownership interest in the property at that time. The problem is with the ownership interest attempted to be conveyed by Mr. Smith, but the conveyance was invalid because of his lack of capacity, which the equitable doctrine does not address much less cure.

3. Defendants further contend that the superior court erred in finding that Terry was entitled to recover $15,000 because the evidence shows that David put far more money into the farm than Terry. But, here again in this situation of a bench trial, the superior court's finding cannot be set aside unless it is clearly erroneous, that is, it must be affirmed if there is any evidence to support it. *James F. Nelson, Jr. Family Ltd. Partnership v. Miller*, supra at 467. And the record discloses evidence as would authorize the award.[9]

4. Finally, the defendants contend that the final judgment partitioning the farm land cannot be upheld because it was based upon the prior erroneous order of May 23, 2001. But, the contention is without merit because defendants have failed to show error in the prior order setting aside the deed and making the award to Terry. See Divisions 1, 2, and 3, supra.

*Judgments affirmed. All the Justices concur.*

DECIDED NOVEMBER 20, 2006 —
RECONSIDERATION DENIED DECEMBER 15, 2006.

*Franklin D. Rozier, Jr., Eugene Highsmith*, for appellants.
*Franklin D. McCrea*, for appellees.

---

[9] David testified that he would be willing to give Terry $15,000 for a hay baler.