**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 20, 2018**

# In the Court of Appeals of Georgia

A18A0781. RIVERS v. REVINGTON GLEN INVESTMENTS, DO-027 LLC.

DOYLE, Presiding Judge.

This case arises from an action filed by Revington Glen Investments, LLC, ("Revington") against William G. Rivers, individually and as sole trustee of the Rivers Family Trust, and other individuals,[1] alleging breach of warranty, misrepresentation, intentional concealment, and nuisance related to a real estate transaction between the parties. The parties filed cross-motions for summary judgment, and the trial court granted summary judgment to Rivers individually as to all claims and to the Trust in regard to all claims except as to breach of warranty. With regard to that claim, the trial court found that the Trust had breached the

---

[1] The three other named individuals were dismissed or protected by filing bankruptcy, so the case proceeded only against Rivers and the Trust.

warranty appearing in the sales contract, and it granted summary judgment to Revington as to that claim. The case proceeded to a bench trial on damages, and after a hearing, the trial court awarded Revington $208,318.94.

The Trust appeals, arguing that the trial court erred by granting summary judgment to Revington on the issue of breach of warranty and by awarding damages to Revington based on that breach.[2] For the reasons that follow, we reverse.

> On appellate review of a bench trial, the factual findings shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. In bench trials, the judge sits as trier of fact[,] and the court's findings are analogous to a jury's verdict and should not be disturbed if there is any evidence to support them.[3]

Moreover,

> [s]ummary judgment is appropriate if the pleadings and evidence show no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. On appeal from the grant or denial of summary judgment, an appellate court conducts a de novo

---

[2] Revington has not appealed from the trial court's grants of summary judgment as to its other claims.

[3] (Punctuation omitted.) *Bourke v. Webb*, 277 Ga. App. 749 (627 SE2d 454) (2006), quoting *Zhou v. LaGrange Academy*, 266 Ga. App. 445, 449 (1) (597 SE2d 522) (2004).

2

review, construing all reasonable inferences in the light most favorable to the nonmoving party.[4]

It is undisputed that in 2013, Rivers, on behalf of the Trust, entered into a contract to sell 7.5 acres of land to Revington. The Trust had acquired the land in 2012 from Richard DeThomas, who had acquired the property in 2005 from Clinton and Tammy Sheriff. According to Rivers, he had "never walked the property" before agreeing to sell it to Revington.

In addition to various other provisions of the contract, the parties agreed pursuant to "Article 9 Environmental Matters" that

A. Seller represents and warrants to Purchaser on this date and as of the Closing Date, that:

(i) Seller has at all times complied with, and has not violated in connection with the ownership, use, maintenance or operation of the Property and the conduct of the business related thereto, any applicable federal, state, county or local laws, regulations, rules, ordinances, codes, standards, orders, licenses and permits of any governmental authorities relating to environmental matters.

---

[4] (Footnotes and punctuation omitted.) *Dan J. Sheehan Co. v. Fairlawn on Jones Homeowners Assn.*, 312 Ga. App. 787, 788 (720 SE2d 259) (2011).

B. Seller represents that to its knowledge and belief on this and as of the Closing Date that:

(i) No Hazardous Substance (as hereinafter defined) exists on or under the Property, and that Seller, nor any of its predecessors in title have ever used the Property for processing, storage or disposal of any Hazardous Substance. This warranty shall survive the closing of the transaction contemplated herein and shall not be merged with the deed. . . .

(ii) Seller and any other person for whose conduct it is or may be held responsible, has at all times complied with, and has not violated in connection with the ownership, use, maintenance or operation of the Property and the business related thereto, any applicable federal, state, county or local laws, regulations, rules, ordinances, codes, standards, orders, licenses and permits of any governmental authorities relating to environmental matters. . . .

C. Seller and Purchaser agree that this Article Number shall survive the closing.

After beginning its development of the property, Revington discovered that a large number of old tires and other debris had been buried in pits on the property. Revington argued to the trial court and on appeal that this constituted a violation by the Trust of OCGA § 12-8-40.1 (f), which prohibits individuals from "storing" more

4

than 25 scrap tires. Revington admitted, however, that Rivers had no knowledge of and did not place the tires or other debris on the property. Revington filed suit in order to recover under Article 9 of the sales contract, and the trial court found that the Trust was liable under Article 9, Section A (i) because the existence of the tires and other debris on the property was in violation of various laws and, therefore, a breach of the warranty under that subsection of Article 9.

> The first rule that courts must apply when construing contracts is to look to the plain meaning of the words of the contract, and it is a cardinal rule of contract construction that a court should, if possible, construe a contract so as not to render any of its provisions meaningless and in a manner that gives effect to all of the contractual terms. Words generally bear their usual and common signification; but technical words, words of art, or words used in a particular trade or business will be construed, generally, to be used in reference to this peculiar meaning.[5]

Bearing these rules in mind, the trial court's reading of the contract is incorrect. Indeed, Revington's argument on appeal makes this clear. Revington argues that the Trust "made the express warranty that the Property had not been used, maintained or operated in any way which violated any . . . law," and the existence of the tires on the

---

[5] (Footnotes and punctuation omitted.) *NW Parkway, LLC v. Lemser*, 309 Ga. App. 172, 175-176 (2) (709 SE2d 858) (2011).

property constituted a violation of OCGA § 12-8-40.1 (f). But this is not what the plain language of Article 9, Section A (i) states. It says that "*the Seller . . . has complied with, and has not violated in connection with the ownership, use, maintenance or operation of the Property,*" which indicates that the Trust was warranting that *it* had not taken any action to violate the law with regard to the property, not that it had taken steps to discover and remediate any existing hidden issues caused by previous owners.[6] The provision does not state that Seller warrants that all previous owners had complied with applicable laws or that the Property was free from hidden environmental contamination. Had Revington wished for such a warranty, it should have demanded such a provision.

Moreover, Revington did not present any evidence that the Trust violated Article 9, Section B because it states that "Seller represents that to its knowledge and belief" that no environmental hazards exist on the property, and Revington admitted

---

[6] (Emphasis supplied). We note that a breach of warranty is not necessarily an intentional act, however, the operative issue here is not whether strict liability is appropriate but whether the plain language of the warranty applies to this situation. Compare with *Taylor Morrison Svcs. v. HDI-Gerling American Ins. Co.*, 293 Ga. 456, 466 (2) (746 SE2d 587) (2013).

6

that Rivers had no such knowledge and did not create the hazard himself.[7]

Accordingly, the trial court erred by granting summary judgment to Revington as to the breach of warranty claim and, thereafter, by awarding a judgment thereon against the Trust.

*Judgment reversed. Dillard, C. J., and Mercier, J., concur.*

---

[7] See *Masinter v. Salem Road Assocs.*, 240 Ga. App. 522 (522 SE2d 562) (1999). We are not persuaded by Revington's argument that this clause serves an important risk-shifting purpose. Revington had the right to survey and inspect the property prior to closing, and because Revington knew it would be performing construction on the property which would include disturbing the soil, Revington was in the best position to shift its own risk by checking for subterranean hazards prior to closing and withdrawing from the contract during the due diligence period had it found such hazards.