**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 21, 2019**

# In the Court of Appeals of Georgia

A19A0252. CARIN BRASWELL, AS ADMINISTRATRIX OF THE ESTATE OF FLOYD HUGHES BRASWELL et al. v. BENTON et al.

BROWN, Judge.

Carin Braswell, as administratrix of the Estate of Floyd Braswell, Sonny Braswell, and Denver Braswell ("Defendants") appeal the superior court's partial denial of their amended motion to amend judgment and motion for new trial following a bench trial. For the reasons explained below, we affirm in part and reverse in part.

"On appellate review of a bench trial, the factual findings shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." (Citation and punctuation omitted.) *Rivers v. Revington Glen Investments*, 346 Ga. App. 440 (816 SE2d 406) (2018). See

also OCGA § 9-11-52 (a). "The clearly erroneous test is the any evidence rule. If there is any evidence to support the findings of fact by a trial court sitting without a jury, then the appellate court affirms without interference with or disturbing such factfindings." (Citation and punctuation omitted.) *City Heights Condo. Assn. v. Bombara*, 337 Ga. App. 679 (788 SE2d 563) (2016). And "[w]e construe the evidence in favor of the judgment." (Citation and punctuation omitted.) Id.

So viewed, the record shows that the current case involves a dispute amongst relatives over the distribution of Florel Braswell's estate. Florel died in 2003, and her three children, Floyd Braswell, William Braswell, and Beth Benton, were named co-executors of her will. To each child, Florel bequeathed a tract of real property. Realizing that the properties would not be equal in value, Florel's will directed the executors to have her land surveyed and appraised and "to allocate any stock, cash and (if necessary) other assets to be distributed so that each heir's share will be equal, taking into account the value of the real property devised." Florel left the largest tract of land, on which sat her home, to Floyd. All the rest, residue, and remainder of Florel's property was devised to her three children.

Following their mother's death, Floyd, William, and Beth amicably worked together to divide her estate and achieve the intent of her will. An appraisal of the

2

three tracts of land revealed that Floyd's tract was worth substantially more than those belonging to William and Beth. In addition, all of Florel's personal property was located in the house now owned by Floyd. Accordingly, the siblings devised a system whereby they would meet at Florel's house and take turns picking out things they wanted.

In 2013, Floyd died and his wife, Carin Braswell, was appointed administratrix of his estate. At the time of Floyd's death, Carin was unfamiliar with the status of Florel's estate administration. She met with Beth and William to discuss what remained to be done, and they agreed to divide the remaining property left in Florel's house. At some point after this meeting, Carin learned that Beth and William had calculated that Floyd's estate owed each of them more than $20,000 to equalize the estate assets among them. At this point, the parties began communicating through their attorneys.

William and Beth requested access to Florel's house in order to inventory and divide the remaining estate property. Carin requested an accounting of Florel's estate as well as documentation supporting William and Beth's assertion that Floyd's estate owed them money. Beth provided a handwritten accounting in June 2013, reflecting the appraised value of each child's tract of land, including the value of timber

3

thereon.[1] After further questioning, Beth provided a revised accounting in September 2013, which took into account Floyd's $10,000 payment of estate taxes as well as various stock and cash distributions to William and Beth.[2] Around this time, the parties met at Florel's house to inventory the remaining estate property, but nothing was divided.

In August 2014, after Carin's attorney raised more concerns and questions, William and Beth, through their attorney, provided a third accounting. The third and final accounting reflected that Floyd's estate would need to pay Beth and William each $2,824.29 to equalize the estate assets. After hearing nothing from Carin and her attorney and still unable to divide the rest of Florel's personal property in the house, William and Beth, individually and as co-executors of Florel's estate, ("Plaintiffs") filed a "Complaint for Conversion and Damages" in superior court, alleging that Carin, as administrator of Floyd's estate, Denver Braswell, Sonny Braswell, and Lori

---

[1] Beth calculated Floyd's current share of Florel's assets to equal $396,725 while William's share was $198,164 and Beth's share was $186,442. This did not take into account the value of the personal property still in Florel's house.

[2] Beth's second accounting calculated Floyd's share of the assets as $386,725, William's share as $364,828.02, and Beth's share as $364,828.02. Again, this did not take into account any of Florel's personal property.

Tyson[3] were in possession of property belonging to William and Beth, individually, and property belonging to Florel's estate. Defendants counterclaimed for an accounting of Florel's estate.[4]

_____

[3] Denver, Sonny, and Lori, along with Carin, are Floyd's heirs. Lori Tyson was voluntarily dismissed from the case prior to trial.

[4] After Plaintiffs filed the instant action in superior court, Defendants filed a petition in probate court for an accounting of Florel's estate. Subsequently, both sides agreed that the issue of accounting would be decided in superior court. The issue of the superior court's jurisdiction over the claim for an accounting of Florel's estate has not been raised at any point in the proceedings.

"The probate courts have 'original, exclusive, and general jurisdiction' over the probate of wills and '[a]ll other matters and things as appertain or relate to estates of deceased persons.' OCGA § 15-9-30 (a) (1), (10)." *Benefield v. Martin*, 276 Ga. App. 130 (622 SE2d 469) (2005). And "[g]enerally, a court of equity (the superior court) will not interfere with the administration of estates." (Citation omitted.) *Powell v. Thorsen*, 248 Ga. 697, 698 (285 SE2d 699) (1982). However, a court of equity may assume jurisdiction over matters relating to the administration of estates in some circumstances, including "where there is a danger of loss or other injury to a party's interest, or where equitable interference is necessary for the full protection of the rights of the parties in interest." (Citations omitted.) *Lee v. Lee*, 260 Ga. 356 (1) (392 SE2d 870) (1990). See also *Powell*, 248 Ga. App. at 698. Here, Plaintiffs asserted claims for conversion of property, seeking a court order requiring Defendants to turn over certain items of personal property. We conclude that such claims are properly heard by the superior court, as a court of equity, and accordingly, the superior court exercised concurrent jurisdiction over the counterclaim for an accounting of the estate. See OCGA § 23-1-5. See also *Powell*, 248 Ga. at 698-699 (because issues of conversion, ownership, and construction of the will could only be fully determined in the superior court, superior court had concurrent jurisdiction over claim for an accounting of estate); *King v. King*, 225 Ga. 142, 144 (4) (166 SE2d 347) (1969) (superior court had jurisdiction over claim alleging fraud on the part of the executor in selling estate property and seeking rescission of deed and thus court had concurrent

5

When Plaintiffs filed their complaint, they attached the final version of Florel's will, which Defendants had not previously seen. This final version contained a provision giving Floyd and Beth each a one-fourth share in the proceeds from timber planted on William's inherited tract of land.[5] Defendants additionally learned that Floyd and Beth, in 2005, had executed releases of their interests in the timber proceeds from William's tract.

Following a bench trial,[6] the superior court entered a final order, adopting and approving Beth's June 19, 2013 accounting of Florel's estate. The court awarded all personal property in accordance with Plaintiffs' three inventories.[7] However, the court

jurisdiction over claim for accounting of the estate). Compare *Benefield*, 276 Ga. App. at 131-132 (superior court had no basis for exercising concurrent jurisdiction over claim for estate accounting where plaintiff only sought remedy of damages for her fraud claim and had not shown that her remedies at law were inadequate for her breach of fiduciary duty claims).

[5] The provision pertinently provides: "I had intended to plant two additional plots [of timber] so that each child would have a 40-acre plot of planted pines but did not. Therefore, as [the timber on William's tract is] sold, the net proceeds will be divided one-half to William, one-fourth to Beth, and one-fourth to Floyd."

[6] Beth Benton passed away prior to the trial.

[7] Along with their complaint, Plaintiffs filed three inventories, or lists, of property at Florel's house: one of property belonging to Florel's estate, one of property belonging to William, individually, and one of property belonging to Beth, individually.

excluded nine items from the list of property belonging to Florel's estate because Carin identified these items as belonging to Floyd. The court ordered Floyd's estate, William, and Beth's estate to divide the remaining personal property of Florel's estate by lottery draw. The superior court also ordered William to reimburse Florel's estate for the attorney fees paid during a separate magistrate court case.

Defendants subsequently filed a motion to amend judgment and motion for new trial. Plaintiffs then filed a motion for costs and attorney fees pursuant to OCGA §§ 9-15-1 and 13-6-11. After retaining new counsel, Defendants filed an amended motion to amend judgment and motion for new trial. In their amended motion, Defendants asked the superior court to amend its judgment to approve the most recent accounting by Beth from August 2014, rather than the June 19, 2013 accounting identified in its order. However, Defendants still disputed that the August 2014 accounting was correct because it did not account for the timber proceeds from William's inherited tract. Defendants further asked the superior court to order Plaintiffs to reimburse Florel's estate for the portion of their legal fees incurred by bringing the action in their individual capacities for property not part of Florel's estate. Finally, Defendants argued that some of the property awarded by the superior

court to William and Beth, individually, belongs to Florel's estate based on testimony presented at trial.

The superior court held a joint hearing on Plaintiffs' motion for costs and attorney fees and Defendants' amended motion to amend judgment and motion for new trial. During the hearing, all parties agreed that the court should amend its judgment to approve the August 2014 accounting rather than the June 19, 2013 accounting. At the close of the hearing, counsel for Plaintiffs stated that to the extent the superior court was inclined to order Plaintiffs to reimburse Florel's estate fees for their individual attorney fees, counsel stipulated that $5,000 would adequately compensate for the time spent on their individual claims.

In denying the motion for new trial, the superior court found, based on William's trial testimony, that Floyd and Beth "both made the decision to give up any such timber rights on [William's] inherited land." The superior court further found that the evidence in the case supported its award of personal property. Finally, the court ordered William and Beth's estate to reimburse Florel's estate $1,500 each in attorney fees for their individual claims and denied Plaintiffs' motion for costs and attorney fees in its entirety. Defendants now appeal from the superior court's order.

1. Defendants contend that the superior court erred in failing to account for the timber proceeds William received from his inherited tract. According to Defendants, in order to adhere to Florel's will, the transfer of Floyd and Beth's interests in these proceeds should be credited in their favor in equalizing Florel's estate.

The transfer document executed by Floyd states that Floyd transferred his interest in the timber proceeds on William's tract "FOR VALUE RECEIVED." Citing *Baggs v. Funderburke*, 11 Ga. App. 173 (74 SE 937) (1912), Defendants argue that "the words 'value received' in a contract constitute prima facie evidence that a contract is supported by consideration." Thus, according to Defendants, the value Floyd received, or should receive, in releasing his right to the timber proceeds on William's tract is a reduction of his inheritance. However, Defendants misconstrue *Baggs*. While this Court, in *Baggs*, did state that "in Georgia the words 'value received' *only* prima facie import a consideration," we went on to explain that "notwithstanding the use of these words, parol evidence is admissible to show there was really no consideration. . . ." (Emphasis supplied.) Id. at 176 (3).

Here, the transfer document's use of the phrase "for value received" is prima facie evidence that Floyd did, in fact, receive consideration for transferring his interest in the timber proceeds, but those words are subject to explanation. See *Baggs*,

9

11 Ga. App. at 176 (3). When asked why he had not shared with Floyd and Beth the proceeds from the sale of timber on his inherited tract in accordance with Florel's will, William testified,

> [b]ecause my brother[, Floyd,] didn't think it was fair. He got papers saying that he wasn't going to — didn't want a fourth interest in the timber anymore, seeing how it was on my land, I was paying taxes on the land and keeping fire breaks cut and such as that.

William further testified that neither Floyd nor Beth indicated to him that they wanted any credit as consideration for the transfer. Defendants contend that the superior court's reliance on this testimony was in error because it is "speculative testimony (at best) or false testimony (at worst)." But this was an issue for the superior court to resolve as the finder of fact. See *Smith v. Smith*, 281 Ga. 380, 382 (1) (637 SE2d 662) (2006) ("[in] a bench trial, the superior court act[s] as finder of fact as well as determiner of the law, and [is] free to ascertain for itself the credibility of the

witnesses").[8] Accordingly, the superior court did not err in denying Defendants' motion for new trial on this basis.

2. Defendants next contend that the superior court erred in awarding certain personal property to William and Beth, individually, without any evidence that they owned the property. For reasons explained below, we agree in part and disagree in part.

(a) *William's Property*. Defendants argue that some of the items awarded to William, individually, actually belong to Florel's estate. During his testimony, William went through some of the items listed as his property. He testified that he had let Florel borrow the table and chairs as well as the television stand. William also testified that he had stored much of his farming equipment at Florel's house, including a hay baler, pig feeder, hog feeder, and tool bin, out of convenience because his property was located nearby. Additionally, William testified that the Snickers-related items belonged to him because he had worked for Snickers. Defendants did

---

[8] To the extent Defendants argue that this testimony was inadmissible hearsay, we disagree. Floyd's statements would qualify as declarations accompanying an act which are necessary to explain or give legal character to the act, and thus would be admissible nonhearsay. See Paul S. Milich, Georgia Rules of Evidence § 17:7 (database updated October 2018). See also *Atlanta Gas Light Co. v. Slaton*, 117 Ga. App. 317, 320 (2) (160 SE2d 414) (1968). We further note that Defendants did not object to the admission of these statements during trial.

not produce any evidence to dispute this testimony. The superior court did not err in concluding that these items belonged to William.

Testimony at trial showed that some items listed as belonging to William were actually property of Florel's estate: the cement rabbit, which had been a gift to Florel, as well as the train set, two Budweiser signs, and a Marlboro sign. We conclude that the superior court erred in awarding these things to William because the only evidence presented at trial showed that they were part of Florel's estate. And we therefore reverse this portion of the superior court's order denying Defendants' motion for new trial.

As to the remaining items on the list, no evidence was presented to show that they belonged to William or that they belonged to Florel's estate. Much of the list was simply not addressed during the trial. Because this portion of the superior "court's judgment is based upon a stated fact for which there is no evidence, it should be reversed." (Citation and punctuation omitted.) *Lamas v. Baldwin*, 140 Ga. App. 37, 39 (1) (230 SE2d 13) (1976). Upon return of this case to the superior court, the parties may reach an agreement with regard to these items, or additional evidence regarding ownership of these items should be submitted by the parties to the superior court.

12

(b) *Beth's Property*. Similarly, Defendants argue that there was no evidence at trial regarding most of the items that Plaintiffs claimed belonged to Beth. To the contrary, Plaintiffs presented testimony as well as documentary evidence, including letters written by Florel, showing that certain items in Florel's house had been left to Beth by an uncle prior to Florel's death. A 1993 letter from Florel's attorney states that "five items of furniture" in Florel's house "belong to Beth by virtue of a gift from Uncle Erie." A 1993 letter written by Florel indicates that items listed in an "Inventory taken of Uncle Erie's bedroom" (the "Erie Inventory") were given to Beth by the uncle; Florel goes on to state that "all [of the uncle's] furniture" had been given to Beth. The Erie Inventory lists, along with other smaller items, a bed, cedar chest, dresser, book case, and hall rack. A letter from Florel's mother identifies the piano in the house as furniture belonging to the uncle along with his bedroom furniture and the book case. Additionally, a letter from Beth states that certain items listed in the Erie Inventory belonged to her, including a hall tree, book case, dresser, and bed. There was ample evidence for the superior court to conclude that the piano, hall tree, and book case along with the dresser, cedar chest, chest of drawers, and brass bed in "Uncle Erie's Room" were Beth's individual property.

13

However, we agree with Defendants that there was no evidence presented at trial that the items listed under "Floyd's Bedroom" and the items listed under "Living Room," apart from the piano and book case, belonged to Beth. Indeed, William testified that the majority of the items on the list of Beth's Property, had been Florel's. Accordingly, these items would be part of Florel's estate and should be divided amongst William, Floyd's estate, and Beth's estate in the lottery. This portion of the superior court's order is therefore reversed.

3. Finally, Defendants argue that the superior court erred in failing to require William and Beth's estate to reimburse Florel's estate for *all* attorney fees attributable to their individual claims. Counsel for Plaintiffs stipulated that $5,000 of the total amount of attorney fees was attributable to the individual claims. However, the superior court only ordered William and Beth's estate to reimburse Florel's estate $3,000 for their individual attorney fees, an amount that Defendants argue is arbitrary and insufficient based on the evidence. We disagree.

"The object of paying attorney fees of administrators and executors is to protect the estate." *Estes v. Collum*, 91 Ga. App. 186, 192 (1) (a) (85 SE2d 561) (1954). "We review for abuse of discretion a probate court's determination regarding the reimbursement of attorney fees." *In re Estate of Haring*, 314 Ga. App. 770, 774 (2)

14

(726 SE2d 86) (2012). Cf. *Chalk v. Poletto*, 346 Ga. App. 491, 493 (816 SE2d 432) (2018) (we apply an abuse of discretion standard of review to a superior court's decision to award attorney fees). The record indicates that the majority of the attorney fees are related to claims connected with Florel's estate. See *Estes*, 91 Ga. App. at 192. The superior court determined that Florel's estate was entitled to reimbursement from William and Beth's estate in the amount of $3000 for their individual claims, and after reviewing the evidence of record, we cannot find that the superior court abused its discretion in making this award. See OCGA § 53-7-6 (4). See also *Hudson v. Abercrombie*, 258 Ga. 729, 732 (2) (b) (374 SE2d 83) (1988) (portion of administrator's attorney fee claim related to personal lawsuits not connected with administration of the estate so as to authorize payment of fees from estate's assets); *Haring*, 314 Ga. App. at 774 (2).

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Mercier, J., concur*.