**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 29, 2019**

# In the Court of Appeals of Georgia

A19A1557. CHEATHAM FLETCHER SCOTT ARCHITECTS, DO-054
    P.C. v. HULL 2000, LLLP.

A19A1558. CHEATHAM FLETCHER SCOTT ARCHITECTS, DO-055
    P.C. v. HULL 2000, LLLP.

DOYLE, Presiding Judge.

These consolidated appeals arise from a defense verdict following a consolidated bench trial on two separate but related breach of contract actions. In 2014, defendant Hull 2000, LLLP ("Hull"), hired plaintiff Cheatham Fletcher Scott Architects, P. C. ("CFS"), to perform architectural and interior design services to assist Hull in building a "hospitality house" in Augusta. Following a dispute about fee payment, CFS sued Hull in the Civil Court of Richmond County,[1] filing two

---

[1] "The . . . Civil Court of Richmond County was originally created as the Municipal Court of Augusta," in 1931 and has jurisdiction over certain criminal and civil matters. *Granger v. State*, 235 Ga. 681, 683 (221 SE2d 451) (1975). See also Ga.

actions based on the two separate design agreements. Civil Action No. 301021 (now Court of Appeals Case No. A19A1557 or "Interior Design Case") asserted claims seeking (a) payment of fees for interior design services, (b) foreclosure of a claim of lien (abandoned at trial), and (c) attorney fees; Civil Action No. 301022 (now Court of Appeals Case No. A19A1558 or "Architectural Design Case") asserted related claims for (a) payment of fees for architectural design services, (b) foreclosure of a claim of lien (abandoned at trial), and (c) attorney fees.

In Case No. A19A1557, Hull filed an answer and counterclaim seeking recoupment of additional money spent to hire another firm to do the interior design work CFS allegedly failed to complete. In Case No. A19A1558, Hull filed an answer and counterclaim seeking recoupment of money it had to spend to build a $55,000 brick wall to comply with changes CFS allegedly adopted before the local Historic Preservation Commission without Hull's permission. In both cases, Hull also counterclaimed for attorney fees.

Following a joint bench trial on both cases, the civil court entered an order consolidating its factual findings and conclusions of law, and entering separate judgments as follows: in the Interior Design Case (Case No. A19A1557), against CFS

L. 1984, p. 4467, § 1 et seq.

2

and in favor of Hull in the principal amount of $8,300 plus $7,500 in attorney fees; and in the Architectural Design Case (Case No. A19A1558), against CFS and in favor of Hull in the principal amount of $44,000 plus $7,500 in attorney fees. CFS now appeals, and for the reasons that follow, we affirm in part and reverse in part in Case No. A19A0557, and vacate the judgment in Case No. A19A1558 and remand with direction.

*Case No. A19A0557*

In this case, CFS contends that the civil court erred by (1) awarding Hull attorney fees of $7,500 pursuant to OCGA § 13-6-11, (2) finding in favor of Hull on its substantive counterclaim, (3) denying CFS's right to have the final closing argument, and (4) finding that Hull had not breached its agreement with CFS.

1. *Attorney fee award to Hull.* Hull's counterclaim sought an attorney fee award under OCGA § 13-6-11 based on CFS's alleged bad faith, stubborn litigiousness, and conduct causing Hull unnecessary trouble and expense. The civil court's order awarded Hull $7,500 pursuant to OCGA § 13-6-11 based on the fact that Hull had moved for summary judgment on CFS's lien claim on the ground that

3

CFS did not comply with a statutory notice requirement,[2] and CFS did not abandon its flawed lien claim until the day of the trial. We note that CFS's response to the summary judgment motion was not due until the day it withdrew its claim.[3] Nevertheless, pretermitting whether this could be considered sanctionable conduct, the trial court's attorney fee award was improper because it was predicated on misconduct that occurred in the course of the litigation, as opposed to in the underlying transaction.[4]

[T]wo statutes, OCGA § 9-15-14 and § 13-6-11, . . . allow for awards of attorney fees based on entirely different categories of sanctionable

---

[2] Hull's summary judgment motion argued that CFS failed to comply with the requirement in OCGA § 44-14-361.1 (a) (3) that the party claiming a lien must file a notice with the clerk of the superior court.

[3] As recounted in the civil court's order, Hull's motion for summary judgment was placed in the mail on September 28, 2018, and CFS withdrew its flawed lien claim on Monday, October 29, 2018, immediately upon going on the record in the trial. See generally OCGA § 9-11-56 (c) ("The motion shall be served at least 30 days before the time fixed for the hearing.").

[4] CFS also argues that such an award is unavailable to a party asserting a compulsory counterclaim, citing *Travelers Property Cas. Co. of America v. SRM Group, Inc.*, 348 Ga. App. 136, 141 (2) (820 SE2d 261) (2018). After the briefing in this case, the Supreme Court of Georgia granted certiorari on that question, see *SRM Group, Inc. v. Travelers Property Cas. Co. of America*, 2019 Ga. LEXIS 553 (Case No. S19C0473; decided Aug. 5, 2019), based on a separate flaw in the award, and we need not address CFS's argument here.

4

conduct. On the one hand, OCGA § 9-15-14 applies to conduct occurring *during the litigation*. OCGA § 13-6-11, on the other hand, permits an award of attorney fees where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. It applies to conduct *arising from the underlying transaction*.[5]

The record is clear that Hull sought attorney fees pursuant to OCGA § 13-6-11, and the civil court made its award explicitly under that Code section. But the allegedly sanctionable conduct cited by the civil court in its order occurred as part of the litigation, i.e., in the 30 days leading up to trial. Therefore, a fee award under OCGA § 13-6-11 was not authorized because that Code section addresses conduct that arises from the underlying transaction, and we reverse the award in this case.[6]

2. *Challenge to $8,300 counterclaim award in favor of Hull*. CFS next assigns as error the award to Hull on its counterclaim for breach of contract, challenging the sufficiency of the evidence.

---

[5] (Citations and punctuation omitted; emphasis in original.) *Trotter v. Summerour*, 273 Ga. App. 263, 267 (2) (614 SE2d 887) (2005).

[6] See id. at 268 (2). See also *Connolly v. Smock*, 338 Ga. App. 754, 760 (2) (791 SE2d 853) (2016) (noting that sanctionable conduct during the litigation is not interchangeable with sanctionable conduct in the underlying transaction).

On appellate review of a bench trial, the factual findings shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. In bench trials, the judge sits as trier of fact, and the court's findings are analogous to a jury's verdict and should not be disturbed if there is any evidence to support them.[7]

And "[w]e construe the evidence in favor of the judgment."[8]

So viewed, the record shows that Hull hired CFS to provide interior design services for a hospitality house Hull desired to build to host guests for the 2015 Masters golf tournament. The interior design services included work such as producing a furniture plan, establishing a budget for furniture and fixtures, selecting finish and hard surface materials, selecting lighting, coordinating closet designs, and coordinating kitchen appliance selection and installation. CFS initially proposed a flat fee of $45,000 for its services, but later agreed to a reduced fee of $35,000. The agreement was not reduced to a single formal written document; rather, it was memorialized by a letter, telephone calls, and other correspondence.

---

[7] (Punctuation omitted.) *Rivers v. Revington Glen Investments, LLC*, 346 Ga. App. 440 (816 SE2d 406) (2018).

[8] (Citation and punctuation omitted.) *City Heights Condo. Assn. v. Bombara*, 337 Ga. App. 679 (788 SE2d 563) (2016).

After CFS began some of this work, Hull was not satisfied with the choices made or services provided by CFS, and CFS ultimately elected not to perform any more interior design services for the project. CFS sent Hull an invoice for 30 percent of the agreed-upon fee, estimating that it had performed 30 percent of the interior design services. Hull declined to pay the invoice, leading to CFS's claim for breach of contract.

On appeal, CFS argues that there is no evidence that it breached the interior design services contract, pointing to the evidence that it did provide some of the agreed-upon services. Nevertheless, the evidence on this question was mixed, with Hull's witnesses explaining that the services they received had no value because they were not useable for the project, and Hull had to begin "at ground zero" with another decorator due to the nature of the project. As an appellate court, we are required to construe this evidence in favor of the civil court's verdict, giving deference to the court's opportunity to hear the evidence in person; in doing so, we cannot say the evidence failed to support a finding that CFS breached its contract with Hull. There was no formal, written agreement outlining all of the contingencies in the event of a dispute or partial performance. There was evidence that the contract reflected an "all

7

or nothing" scenario in pursuit of a unified design scheme throughout the house.[9]

Further, there was evidence that Hull had to engage a more expensive designer due to the timing of the project[10] and the late start due to CFS's retirement from the contract. The parties knew that timing was of the essence, and damages were limited to the premium price Hull was required to pay to retain a new designer on short notice. In light of the record before us, the civil court was authorized to find in favor of Hull on its counterclaim against CFS.[11]

---

[9] See, e.g., *Ramco Roofing & Supply Co. v. Kaminsky*, 156 Ga. App. 708, 709 (3) (275 SE2d 764) (1980) ("A party to an entire contract who has partly performed it and subsequently abandons the further performance according to its stipulations, . . . voluntarily and without fault on the part of the other party, or his consent thereto, can recover nothing for such part performance. Unanticipated difficulty does not excuse performance of a contractual duty.") (punctuation omitted).

[10] The award reflects the difference between the contracted amount Hull agreed to pay CFS and the amount it ultimately paid to another designer after the dispute in this case arose.

[11] See, e.g., *Pool Markets South v. Coggins*, 195 Ga. App. 50, 51 (1) (392 SE2d 552) (1990) ("[W]here a building contract is breached or abandoned by the contractor without fault on the part of the other party, the measure of damages is ordinarily the reasonable cost of completion, that is, the difference between the contract price and the reasonable and necessary cost to the owner to have the work done in accordance with the terms of the original contract.") (punctuation omitted), citing OCGA § 13-6-2; *Ayers Enterprises Ltd. v. Adams*, 131 Ga. App. 12, 17 (3) (205 SE2d 16) (1974) ("For defective or unfinished construction[,] the owner is entitled to judgment for the reasonable cost of completion in accordance with the contract.") (punctuation omitted).

3. CFS next contends that the trial court erred by denying it the right to have the final word at closing arguments. Asserting that it was the party with the burden of proof, CFS argued to the trial court that it had the right to close at the conclusion of the bench trial, arguing that Hull had precluded its right to close by presenting evidence.[12] But pretermitting whether the civil court improperly allowed Hull to conclude the argument, the record shows that CFS initially requested to close, but after a colloquy with the court, CFS's attorney ultimately ended the discussion and stated, "Your Honor, we'll move forward," and presented its argument without any further objection or request following Hull's argument.[13] "No matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in

---

[12] We note that neither party was prohibited from the opportunity to make an argument at the close of the evidence. Compare *Wilson v. Wilson*, 277 Ga. 801, 804 (1) (596 SE2d 392) (2004) (holding that the trial court erred by refusing to hear closing arguments altogether, explaining that "[t]he attorneys in the cause are not mere carriers to bring in materials for constructing the edifice; they have a right, as representing the parties, to suggest where every important stone should be laid, and to assign reasons, drawn from legitimate sources, in support of their suggestions. Their reasons may be good or bad, but such as they are they should be heard and considered.") (punctuation omitted).

[13] We note that the transcript contains several instances noting "Latin spoken" by the trial court when announcing a ruling or addressing the attorneys. Our review is necessarily limited by the absence of a transcription of the actual words, Latin or otherwise, spoken by the trial court during this colloquy.

the holding, and then complain of the same on appeal. He must stand his ground. Acquiescence deprives him of the right to complain further."[14] Accordingly, based on this record, we discern no basis for reversal.[15]

4. CFS also contends that the trial court erred by finding that it failed to prove a breach of contract on the part of Hull. But as noted above in Division 2, the evidence on the value rendered to Hull was mixed, and we are required to construe the evidence in favor of the civil court's verdict. The civil court, acting as the finder of fact in a bench trial, is owed deference to its factual findings, and we will not reverse those findings if there is any evidence to support them. Based on the record before us, we cannot say that the findings in favor of Hull were clearly erroneous or unsupported by any evidence.[16]

*Case No. A19A0558*

---

[14] (Punctuation omitted.) *Graybill v. Attaway Constr. & Assoc.*, 341 Ga. App. 805, 808 (1) (802 SE2d 91) (2017).

[15] See *McConnell v. Akins*, 262 Ga. App. 892, 893 (3) (586 SE2d 688) (2003) ("On appeal, a party must show harm as well as error.").

[16] See, e.g., *Rivers*, 346 Ga. App. at 440.

As noted above, this case arose from CFS's action based on the alleged breach of the architectural design services contract. According to the complaint and accompanying documents, that contract provided that CFS would render certain architectural services to Hull for a flat fee of $60,000, but after CFS performed certain services, Hull paid for a portion of the services but refused to pay the outstanding amount of $12,060. Therefore, CFS filed a complaint in the Civil Court of Richmond County seeking damages in the principal amount of $12,060, plus attorney fees. In its answer, Hull filed a counterclaim seeking recoupment of $55,000 it was required to spend to build a brick wall that was not contemplated as part of Hull's original construction plan and which CFS — without Hull's permission — had allegedly obligated Hull to build in order to obtain a certificate of appropriateness from the Historic Preservation Commission.

5. On appeal, CFS contends that Hull's counterclaim exceeded the civil court's jurisdictional limit as to amount in controversy, so the civil court lacked subject matter jurisdiction and should have transferred the case to the appropriate venue as

requested by CFS at trial. This issue presents a question of law, so we review the civil court's ruling de novo.[17]

The subject matter jurisdiction of the civil court is prescribed in legislation found in the Georgia Laws from 1990:

> (c) The jurisdiction of the civil court of [Richmond C]ounty as to all civil cases, proceedings . . . claims or counterclaims, arising ex contractu or ex delicto, shall be concurrent with the jurisdiction of the state court of said county in every civil claim, matter, or proceeding in which the principal amount claimed, indebtedness, damages, or value of property claimed in controversy by any party litigant does not exceed $45,000 exclusive of interest, hire, statutory penalty, attorney's fee, and court costs.

> (d) *Should any defending party file a counterclaim or setoff which seeks an affirmative recovery for a principal amount or value in excess of $45,000 and the jurisdictional limits of the civil court as heretofore defined, upon such fact being brought to the attention of the court, the judge of the civil court to whom the case or matter is assigned shall pass an order transferring the entire case or matter to the State Court of Richmond County, Georgia*, or to the superior court, if made necessary

---

[17] See *Henderson v. James*, 350 Ga. App. 361, 361 (829 SE2d 429) (2019) ("When reviewing a trial court's ruling on a motion to dismiss for lack of jurisdiction that has been decided on the basis of written submissions, we are in an equal position with the trial court to determine the facts and therefore examine the facts under a non-deferential standard.") (punctuation omitted).

12

by the character of the relief sought, for all future action, unless the case shall be transferred back to the civil court by the higher court. . . .[18]

CFS points to Hull's counterclaim and argues that it exceeded the civil court's $45,000 jurisdictional ceiling in the above legislation. As explained by this Court in *Champion v. Rakes*[19] when examining a similar question, the jurisdictional language above focuses on the amount sought in the counterclaim, so we examine the court's jurisdiction "at the time of filing," as opposed to the amount shown by the evidence or awarded by the court.[20] Hull's counterclaim asserted that CFS's representations before the Historic Preservation Commission "caused [Hull] to incur significant costs (in excess of $55,000) which were not contemplated as part of the [architectural services a]greement." It further asserted that Hull "is entitled to recoupment of the additional money spent as a result. . . ." Therefore, it is plain from the pleading that

---

[18] (Emphasis supplied.) Ga. L. 1990, p. 4109-4110, § 1.

[19] 155 Ga. App. 134 (270 SE2d 272) (1980).

[20] See id. at 134. Accord *Bobick v. C&S Bank*, 321 Ga. App. 855, 866 (3) (d) (743 SE2d 518) (2013) ("It is true that subject matter jurisdiction is assessed at the time of the filing of a suit and is not lost by the occurrence of subsequent developments."). Although we focus on the value of the claim at the time of the filing, there was trial testimony from Hull's sole member manager, James Hull, that the amount of damages sought in the counterclaim was $55,000: "We're seeking that $55,000 as an expense that we shouldn't have to make."

13

Hull's counterclaim sought an amount greater than $45,000, and the civil court erred by not entering a transfer order as directed by the governing legislation.

In declining to do so, the civil court judge noted that CFS had not taken action to transfer the case prior to trial. But this ignores the fact that at the very outset of trial, on the third full page of the trial transcript, CFS asserted that the jurisdictional issue was susceptible to a motion to dismiss and offered to argue the issue "at the beginning or when it comes up." When CFS invited the court to take up the issue because "it might cut some testimony," the court replied "I don't mind having additional testimony. Let's just go forward with both cases." When the evidence later developed that the counterclaim amount exceeded $45,000, and CFS again raised the issue, the court replied that "the irregularity is waived."

But Georgia law consistently holds that "jurisdiction of the subject matter cannot be waived, consent cannot confer jurisdiction[,] and the lack of jurisdiction can be taken advantage of at any time."[21] In keeping with the statutory language at issue, CFS brought the jurisdictional defect to the attention of the court at the outset

_____

[21] *Champion*, 155 Ga. App. at 135. Accord *Abushmais v. Erby*, 282 Ga. 619, 622 (3) (652 SE2d 549) (2007) (disapproving of a Court of Appeals decision holding that a party waived a challenge to subject matter jurisdiction by raising it for the first time on appeal).

14

of trial, even noting the opportunity to streamline the evidence and save time.[22] After CFS notified the court of the defect, it was incumbent upon the court to "pass an order transferring the entire case or matter to the" appropriate court, as required by the applicable legislation. It failed to do so; accordingly, we vacate the civil court's judgment in this case (Civil Action No. 301022) and remand with direction that it be transferred consistent with this opinion.[23]

6. CFS's remaining enumerations are moot.

*Judgment affirmed in part and reversed in part in Case No. A19A1557; judgment vacated in Case No. A19A1558 and case remanded with direction. Coomer and Markle, JJ., concur.*

---

[22] While it certainly may be preferable for a party to raise a jurisdictional defect at the earliest practicable moment, nothing required it in this case, and waiver of subject matter jurisdiction did not operate as a result of Hull's conduct here. See, e.g., *Abushmais*, 282 Ga. at 622.

[23] See *Champion*, 155 Ga. App. at 135 ("[J]urisdiction of the subject matter is given only by law, and a judgment on a matter not within the jurisdiction of the court is void at all times.") (citation omitted). See also *Thor Gallery at S. DeKalb, LLC v. Monger*, 338 Ga. App. 235, 238 (1) (789 SE2d 806) (2016) (vacating for lack of subject matter jurisdiction and remanding with direction to transfer).